**UNITED STATES COURT OF APPEALS**

**For the Fifth Circuit**

No. 94-40521

Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

HAROLD S. GIBSON,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Texas

(March 21, 1995)

Before JONES, BARKSDALE, and BENAVIDES, Circuit Judges.

PER CURIAM:

This appeal concerns the use of information obtained from co-defendants in computing the sentence assessed the appellant. Appellant Harold Gibson claims that such use violated the terms of a cooperation agreement and should not have been available in assessing his punishment. Finding no error in the use of information garnered from Gibson's co-defendants, we AFFIRM.

FACTS AND PROCEDURAL HISTORY

In October 1993 Harold Gibson and co-defendants, Buford Jefferson and Eddie McGee, were stopped in Beaumont, Texas, by a highway trooper who discovered a package of fifteen crack cocaine "cookies" (later determined to contain 278.91 grams of cocaine base) in the air vent compartment under the hood of their car. Pursuant to written plea agreements, Gibson, Jefferson, and McGee pleaded guilty and agreed to provide assistance to the Government. Each gave post-arrest statements, submitted to Government debriefings, and participated in presentence interviews by the probation officer. All of the defendants told the probation officer that (1) they were recruited by the same individual in Hattiesburg, Mississippi, to transport cocaine from Houston, Texas to Mississippi, (2) they were paid $1,000 per trip, (3) they flew or drove to Houston and waited for the drugs to be delivered to them, and (4) sometimes Jefferson or McGee would purchase the drugs for transport to Mississippi. According to the probation officer, although the dates and the drug amounts transported per trip varied among the defendants' accounts, Jefferson and McGee reported that Gibson made at least 15 trips with either or both of them between January and September 1993, and that at least six ounces of crack cocaine were transported each trip.

Based on that information, the probation officer determined that Gibson was accountable for 2.83 kilograms of cocaine base (278.91 grams seized in the instant arrest plus a total of 2,551.5 grams transported during the 15 earlier trips). From the base

2

offense level of 38, the probation officer deducted three levels for acceptance of responsibility, which resulted in a total offense level of 35.  Applying a criminal history category of I to a total offense level of 35 yielded a guideline-imprisonment range of 168-210 months.

In written objections to the PSR and at the sentencing hearing, Gibson argued that he should not be responsible for any drugs not seized incident to his arrest because (1) they became known to the Government as part of Gibson's cooperation agreement, (2) Jefferson and McGee's agreement to cooperate was the direct result of Gibson's cooperation, (3) Jefferson and McGee could not be treated as independent sources because they were merely corroborating the information that Gibson provided (in his debriefing on December 3rd), and (4) the use of the information obtained from Gibson, Jefferson, and McGee violated the terms of Gibson's cooperation agreement contained in a "proffer letter" he signed with the Government.[1]  To Gibson's objections to the PSR, the probation officer responded that there was no evidence to support Gibson's argument that he was responsible for Jefferson and McGee's cooperation, that no drug amounts were discussed at

---

[1]The "proffer letter" from the Government to Gibson's counsel was dated the same day as Gibson's debriefing, December 3rd, and provided that "no statement made by or other information discussed with your client will be used against your client in the Government's case-in-chief."  The plea agreement dated January 24, 1994, is silent respecting the "proffer letter" and the use of incriminating statements made by Gibson; it does provide, however, that Gibson and his attorney "acknowledge and confirm that this is the entire plea agreement which has been negotiated by and between the parties, that no other promise has been made or implied by or for either the Defendant or the Government...."

Gibson's December 3rd debriefing, and that

> "[d]ue to the vagueness of the information [Gibson] provided to law enforcement, this probation officer, along with the attorneys of each defendant, conducted separate interviews with their respective clients to gather the specific facts regarding amounts. In fact, the defendant's recollection of facts during two of those meetings was still somewhat ambiguous and extreme, and the probation officer had to interview him a third time. His attorney systematically assisted [Gibson] and the probation officer in determining exact amounts and roles. In essence, what the defendant ultimately arrived at as being the facts was merely a confirmation of what this two codefendants had already provided."

At the sentencing hearing, in response to the district court's question whether he had used any information from Gibson in the drug-quantity determination, the probation officer reiterated that he used information from Jefferson and McGee only to calculate the drugs attributable to Gibson. The district court overruled Gibson's objections, adopted the findings in the PSR, and sentenced Gibson to a term of imprisonment of 168 months. Gibson timely perfected his appeal.

## ARGUMENTS AND ANALYSIS

Gibson contends that the district court committed error in its determination of the drug quantity attributable to him because it considered information obtained during Gibson's debriefing in contravention of Gibson's plea agreement, cooperation agreement, and U.S.S.G. § 1B1.8. Relying on Kastigar v. U.S., 406 U.S. 441, 453, 92 S. Ct. 1653, 32 L. Ed. 2d 212 (1972), and U.S. v. North, 920 F.2d 940, 942 (D.C. Cir. 1990), cert. denied, 500 U.S. 941 (1991), Gibson further asserts that because Gibson was debriefed before Jefferson or McGee were interviewed, "it is likely" that the

4

probation officer used the latter interviews to confirm the information Gibson revealed during the earlier debriefing and that the Government did not prove that the information was "derived from a legitimate source wholly independent of [the] compelled testimony" that was "not shaped, directly or indirectly, by [the] prior immunized testimony of the defendant." He maintains that the Government's burden cannot be satisfied by a "mere assertion" that the immunized testimony was not used.

Gibson suggests that the issue "[w]hether the government's conduct violated the terms of the plea agreement is a question of law, which on appeal in reviewed de novo." But disputes concerning the terms of a plea agreement generally, as in this instance, involve resolution of factual issues by the district court. Because Gibson raised this issue before the district court, this Court reviews the district court's factual findings for clear error. U.S. v. Borders, 992 F.2d 563, 566-67 (5th Cir. 1993). In U.S. v. St. Julian, 922 F.2d 563-566-67 (10th Cir. 1990), the Tenth Circuit applied a "clearly erroneous" standard in reviewing a district court's determination that the use of co-defendants' statements in sentencing did not violate § 1B1.8 when the defendant did not adduce any evidence to show that had he refused to cooperate, his co-defendants would not have offered the allegedly tainted information. We also believe this is the appropriate standard to be applied in reviewing Gibson's alleged violation of his cooperation agreement in the instant case. "A finding is 'clearly erroneous' when although there is evidence to support it,

5

the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." U.S. v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948).

Although Gibson's plea agreement is silent respecting the Government's use of incriminating statements and the parties agreed that the plea agreement constituted the entire understanding between the parties, it is unclear whether the cooperation agreement contained in the "proffer letter" survived the plea agreement. We need not determine whether the cooperation agreement survived the plea agreement, however. Assuming arguendo that the Government's promise not to use incriminating information has survived, § 1B1.8 would be applicable. It provides that when a defendant agrees to provide information concerning unlawful activities of others, and "as part of that cooperation agreement the [G]overnment agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement."

Gibson argues that Jefferson and McGee merely corroborated drug-quantity information that he provided during the December 3rd debriefing, but that the Government possessed none of the information before the debriefing, and that but for his cooperation, the others would not have entered into plea agreements. The probation officer responded that no drug amounts

6

were established during the December 3rd meeting during which Gibson provided an overview of the drug operation, that Jefferson and McGee provided the information later, that Gibson's recollection during the debriefing and the presentence interview "was still somewhat ambiguous and extreme, and the probation officer had to interview him a third time," that it was Gibson who subsequently corroborated the information provided by the others, and that Gibson adduced no evidence to show that he was instrumental in obtaining Jefferson's and McGee's cooperation. The district court found that the probation officer was relying on information independent from that presented by Gibson. Thus, regardless whether we apply a "clearly erroneous" standard or a de novo standard, because the probation officer unequivocally testified that none of the drug-quantity information obtained from Gibson during the December 3rd debriefing or in the first presentence interview was used to determine his offense level, and that it was Gibson who subsequently corroborated his co-defendants' accounts of the drugs transported during the earlier trips, the district court's determination that § 1B1.8 was not violated will not be disturbed.[2]

The judgement and sentence of the district court is AFFIRMED.

---

[2]Gibson's citations to Kastigar and North in support of his argument that the Government improperly relied on information discovered during his debriefing are unavailing. Both cases are factually inapposite and involve the use of immunized testimony at trial. See Kastigar v. U.S., 406 U.S. at 460-62; U.S. v. North, 920 F.2d at 941-42.