Revised January 15, 2002

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 00-30936**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**SHANNON TAYLOR, also known as Shandoe,**

**Defendant-Appellant.**

_____

Appeal from the United States District Court
for the Western District of Louisiana
_____

December 21, 2001

Before JONES, and DeMOSS, Circuit Judges, and LIMBAUGH,[1] District
Judge.

DeMOSS, Circuit Judge:

Shannon Taylor was charged in a 17-count indictment with ten
other individuals. Taylor ultimately entered into a plea agreement
in which he agreed to plead guilty to count one (conspiracy to
distribute cocaine base) and to provide substantial assistance in

_____

[1]  District Judge of the Eastern District of Missouri,
sitting by designation.

the case.  In exchange, the government agreed to dismiss the remaining four counts against Taylor and to file a § 5K1.1 motion for downward departure.  As part of his plea agreement, Taylor was granted use immunity for statements to law enforcement agents and testimony against others.  Taylor now appeals his sentence because he claims that the PSR used to determine his sentence contained drug quantities that were not known to the government until he provided the information.

## BACKGROUND

Shannon Taylor (a.k.a. Shandoe) was charged with five drug distribution and conspiracy counts in a 17-count indictment along with ten other individuals.  Pursuant to a plea agreement, Taylor pleaded guilty to count one (conspiracy to distribute cocaine base) and the government agreed to dismiss the remaining counts against Taylor and to file a § 5K1.1 motion for downward departure if Taylor provided substantial assistance.  As part of his plea agreement, Taylor was granted use immunity for statements to law enforcement agents and testimony against others.  Based on the pre-sentencing investigatory report ("PSR") issued, Taylor received 240 months imprisonment (the statutory maximum) and, subsequent to the government's filing of a § 5K1.1 motion, the court departed downward and sentenced Taylor to 120 months of imprisonment.  Taylor objected to the trial court's use of the PSR and

specifically objected to paragraphs 15, 16, 17 and 18 of the PSR as to the drug quantities alleged.

Paragraph 15 alleges that Taylor was supplied with approximately 25 ounces of cocaine base from January 1999 until early December 1999. Paragraph 16 alleges that Taylor also received approximately two ounces of cocaine base every two weeks in 1999 from a source in Cullen, Louisiana, and concludes that the total distributes from this source was approximately 100 ounces (though this number is clearly incorrect[2]). Paragraph 17 provides that, on one occasion, Taylor and Dale Anderson purchased nine ounces of cocaine base in Cullen, Louisiana. Paragraph 18 provides that the total amount of cocaine base attributed to Taylor for the conspiracy charged is at least 134 ounces or 3,798.90 grams, or 3.798 kilograms.

Taylor objects that the information in paragraphs 15, 16 and 17 is based on information that he provided and that it is therefore protected by his use immunity agreement. Taylor further objects that paragraphs 16 and 17 are in regard to transactions totally unrelated to the conspiracy with which he is charged. Finally Taylor argues that the total amount reached in paragraph 18 is wrong (based on the faulty 100 ounce number in paragraph 16) but concedes that even if the math is corrected, if all else remains

_____

[2] The time period alleged is approximately 50 weeks. Two ounces every two weeks is therefore a total of 50 ounces.

3

the same then this mistake will not affect Taylor's base level of 38.[3]   If Taylor is correct in his assertion that the drug quantities in the PSR should not have been used, this would drastically alter his base level.

**DISCUSSION**

Standard of review

A defendant may appeal a sentence imposed under the Sentencing Guidelines if the sentence "(1) was imposed in violation of law; (2) was imposed as a result of an incorrect application of the sentencing guidelines; or (3) is greater than the sentence specified in the applicable guideline range . . . ."   18 U.S.C. § 3742(a); *United States v. Shipley*, 963 F.2d 56, 58 (5th Cir. 1992).   A district court's application of the Sentencing Guidelines is reviewed *de novo*; however, the sentencing court's findings of fact are reviewed for clear error.   *United States v. Peterson*, 101 F.3d 375, 384 (5th Cir. 1996).   In determining a sentence, the district court is not bound by the rules of evidence and may consider any relevant information without regard to its

---

[3]      There also appears to be at least two other abnormalities in the proceedings.  In count 13 of the original indictment, Taylor was alleged to have sold over five grams of cocaine base, which Taylor insisted was incorrect.  He was right, as the crime lab report showed that the amount was only 2.6 grams and not the 6.2 alleged.  Also, the government seems to have dropped from the PSR an allegation that Taylor was a "mid-level distributor" possibly in response to Taylor's objection that there was no evidence to support the allegation.  This places Taylor's base level at 35.

4

admissibility provided the information considered has sufficient indicia of reliability. **United States v. Shacklett**, 921 F.2d 580, 584 (5th Cir. 1991) (citing U.S.S.G. § 6A1.3(a)). The district court's reliance on a PSR for the quantity of drugs is based, therefore, on a finding of fact that the PSR's information contains an indicia of reliability and should be reviewed for clear error. *See* *id.* (finding that the district court clearly erred in relying on the drug quantity in a PSR because it lacked any indicia of reliability); *Cf.* **Peterson**, 101 F.3d at 384 (finding that a district court's determination of the amount of financial loss, based in part on a PSR, is a factual finding that will be reviewed for clear error).

## The district court's decision to base the sentence on the contested PSR

The only fact in dispute in this case is whether the information provided as to drug quantities in the PSR was provided by Taylor or by other sources, independent of the information provided by Taylor as part of his plea agreement.[4] Taylor contends that he either provided the information directly or gave leads that were used against him to get the quantities in dispute. The government answers that the information was wholly obtained from

---

[4] At sentencing, information provided under a use immunity agreement may be considered but shall not be used in determining the applicable guideline range except to the extent provided in the agreement. U.S.S.G. § 1B1.8(a). Use of such information is acceptable if the information was "known to the government prior to entering into the cooperation agreement . . . ." § 1B1.8(b)(1).

5

outside sources, independent of Taylor's assistance.  Neither side has offered evidence in support of their claim and so the question becomes one of who has the burden of proof.  If it is Taylor, then he has failed and his claim is without merit.  If the government has the burden, however, then the sentence should be vacated and the case should be remanded for re-sentencing.

Generally, a PSR bears sufficient indicia of reliability to permit the district court to rely on it at sentencing.  *United States v. Dabeit*, 231 F.3d 979, 983 (5th Cir. 2000); *United States v. Ayala*, 47 F.3d 688, 690 (5th Cir. 1995).  "The PSR, however, cannot just include statements, in the hope of converting such statements into reliable evidence, without providing any information for the basis of the statements." *Dabeit*, 231 F.3d at 983.  Normally, the defendant has the burden to show that the information relied on in a PSR is inaccurate.  *United States v. Franklin*, 148 F.3d 451, 460 (5th Cir. 1998); *Ayala*, 47 F.3d at 490.  The rebuttal evidence presented by the defendant must show that the PSR's information is materially untrue, inaccurate or unreliable.  *United States v. Parker*, 133 F.3d 322, 329 (5th Cir. 1998).

Though the standard set out above would indicate that Taylor has failed to meet his burden, the burden is not the same when a "use immunity" plea agreement is involved.  "Under a grant of use immunity, the government is prohibited from using information provided by the defendant in any criminal case." *United States v.*

6

*Cantu*, 185 F.3d 298, 301 (5th Cir. 1999).  This prohibition is comprehensive, i.e., the government may not use the defendant's testimony directly as evidence or indirectly as an investigatory lead.  *Id.* at 301-02; *Kastigar v. United States*, 406 U.S. 441, 460-62 (1972).  Furthermore, information that is provided pursuant to such an agreement may not be used in determining the applicable guideline range under the Sentencing Guidelines.  U.S.S.G. § 1B1.8(a).  "When a defendant claims that the government wrongfully used immunized testimony, the government has the burden of proving by a preponderance of the evidence 'that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony.'"  *Cantu*, 185 F.3d at 302 (quoting *Kastigar*, 406 U.S. at 460); *see also United States v. Fulbright*, 804 F.2d 847, 852 (5th Cir. 1986) (applying *Kastigar* in sentencing context in a pre-guidelines case).

The government contends that the burden is on Taylor to rebut the PSR, which Taylor has not done.  The government further cites to *United States v. Gibson*, 48 F.3d 876 (5th Cir. 1995), to support its position that the district court was correct in relying on the PSR.  *Gibson*, however, actually supports the proposition that the burden is on the government to prove that the drug quantity information came from sources other than the defendant.  In *Gibson*, a defendant's sentence was calculated using information provided by two co-defendants.  *Id.* at 877.  The defendant, Gibson, asserted

7

that the information was based on information provided by him and its use violated a plea agreement that he had entered into with the government. *Id.* at 879. Though a probation officer testified that none of the information came from the defendant, Gibson asserted that the government's burden could not be satisfied by the probation officer's testimony alone. *Id.* The court responded that:

> Because the probation officer **unequivocally testified** that none of the drug-quantity information obtained from Gibson . . . was used to determine his offense level, and because it was Gibson who subsequently corroborated his co-defendants' accounts of the drugs transported during the earlier trips, the district court's determination that § 1B1.8 was not violated will not be disturbed.

*Id.* (emphasis added). This holding not only tacitly approves of the burden being on the government but also makes it clear that this burden was met because the probation officer unequivocally testified as to the matter.

Further support that the burden lies with the government can be found in *United States v. Shacklett*, 921 F.2d 580 (5th Cir. 1991). In *Shacklett*, the district court relied on the unsubstantiated assertions of the probation officer that the information regarding drug amounts came from coconspirators and law enforcement officers. *Id.* at 584. There was nothing in the record in *Shacklett*, aside from the PSR, to corroborate this. *Id.* The defendant pleaded guilty to one count of conspiring to manufacture

8

and to possess with intent to distribute nine pounds of amphetamine. *Id.* at 581. At sentencing, Shacklett objected to the court's use of 66 pounds of amphetamine to calculate his offense level, rather than the nine pounds stipulated to in the plea agreement because, he claimed, the government reliably knew of only the lesser amount before he cooperated. *Id.* at 584. The government conceded that when Shacklett agreed to cooperate, only nine pounds of amphetamine were attributable to Shacklett. *Id.* The probation officer intervened, stating that the government knew of the 66 pounds because Preston Isham, a convicted member of the same drug conspiracy, had informed the government that 66 pounds of amphetamine had been produced in his labs in which Shacklett was the "cook." *Id.* The district court relied on the probation officer's assertion, adopted the findings of the PSR, and sentenced Shacklett based on 66 pounds of amphetamine. *Id.* at 582. This Court reversed that finding on the basis that no indicia of reliability existed to support the probation officer's contention. *Id.* at 584.

This Court specifically found that **the government** had failed to establish that the evidence had any indicia of reliability, stating:

> The PSR does not refer to the source of the "facts" it contains and is unclear as to who (if not Shacklett) or what provided the information to the probation officer. Throughout the PSR, the probation officer refers to "an interview of

9

Isham," conducted by the DEA, but nowhere is it stated when, where, by whom, or for what purpose Isham was interviewed. It is unclear whether the probation officer who conducted Shacklett's presentence investigation directly contacted the unnamed DEA agent, spoke to Isham personally, or relied on a written report of the interview. Therefore, we are left to review a sentence based on an unproduced report, which could have been either written or oral, made by some unidentified DEA agent at some point before Shacklett cooperated with the government. Contrary to the government's assertion on appeal, the district court could not have made a credibility determination between Shacklett and Isham, because neither Isham nor the mystery DEA agent ever appeared before the sentencing court.

Despite ample notice that Shacklett challenged the reliability of the sixty-six pound quantity, the district court never required the probation officer who prepared Shacklett's PSR to produce the report or support his conclusion in any way. Rather, the court based Shacklett's sentence on the probation officer's bald assertion that the government knew of the amount prior to Shacklett's cooperation. The district court clearly erred in using the sixty-six pounds as a basis for Shacklett's sentence, without more than the probation officer's conclusory statement, particularly in light of the government's concession on the issue.

*Id.* at 584. Though the government tries to distinguish the present case from **Shacklett** on the basis that the government in **Shacklett** conceded at one point that the defendant was correct, the court in **Shacklett** made it clear that it was the ambiguity of the evidence and lack of testimony that destroyed the reliability of the PSR. Considering the number of errors made in this case, the reliability of the PSR was already on shaky ground. *See* n.2-3, *supra*. Furthermore, it seems clear from **Shacklett** and **Gibson** that, when a

10

use immunity agreement is involved, and the defendant questions the sources of the evidence used against him at sentencing, the burden is on the government to show that the evidence is from outside sources.

The present case is very similar to *Shacklett*. Both cases involve a defendant who engaged in a plea agreement which granted him use immunity. As in *Shacklett*, the PSR in the present case contained information that, from the record, already seemed questionable at the time the district court was considering it for sentencing. Also, as in *Shacklett*, the probation officer did not testify as to where the information contained in the PSR came from. This Court is convinced, therefore, that the burden was on the government to show that the PSR had an indicia of reliability as required by U.S.S.G. § 6A1.3(a). The government's bald assertions that the evidence did not come from Taylor are not enough to sustain this burden. *Id.; see also United States v. Elwood*, 999 F.2d 814, 817-818 (5th Cir. 1993) (citing *United States v. Paterson*, 962 F.2d 409, 415 (5th Cir. 1992) to support the holding that, when the burden is on the government, unsworn assertions by government agents do not provide, by themselves, a sufficiently reliable basis on which to sentence a defendant); *cf. Gibson*, 48 F.3d at 879 (holding that when a probation officer testified, the district court did not err in relying on the PSR). Had the probation officer testified as to where the information came from

11

and been able to give more details, then this case might have had a different outcome.  *See **Gibson***, 48 F.3d at 879.  As it stands, it should be remanded.

## CONCLUSION

The standard of review for findings of fact such as drug quantity and whether or not a PSR's information has an indicia of reliability should be reviewed for clear error.  Though such cases normally place the burden on the defendant to produce evidence rebutting the PSR, when a plea agreement involving use immunity is involved, the burden shifts to the government to prove that the information in the PSR is not based on information obtained from the defendant.  The threshold for meeting this burden is low; in many cases the government need only present testimony as to the source of the information.  When the government relies on bald assertions, however, as they have done in the present case, the government fails to meet this burden.  Therefore, having carefully reviewed the record of this case and the parties' respective briefing and for the reasons set forth above, we conclude that the district court clearly erred in considering the PSR because the court did not require the government to prove that the PSR contained an indicia of reliability.  The district court's sentence is VACATED, and the case is REMANDED for re-sentencing.

**VACATED AND REMANDED.**

12