**REVISED OCTOBER 30, 2002**

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 01-11467
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

FRANCISCO GONZALEZ, also known as Pancho,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

October 14, 2002

Before DeMOSS, STEWART, and DENNIS Circuit Judges.

DeMOSS, Circuit Judge:

Francisco Gonzalez was charged by indictment with conspiracy to distribute marijuana and possession with the intent to distribute marijuana. Gonzalez pled guilty to the conspiracy charge pursuant to a plea agreement and agreed to cooperate with the Government. At the sentencing hearing, information provided by Gonzalez when he was debriefed by the Government was disclosed to the district court. Gonzalez appeals claiming that this

information was used against him and therefore the Government breached the plea agreement. We find that there was a breach of the agreement.

## BACKGROUND

The undisputed facts set forth in the plea agreement establish that Francisco Gonzalez entered into a conspiracy with Victor Mondragon and Raul Gutierrez to acquire marijuana in Mexico and transport it for sale in the Dallas area. Gonzalez made arrangements with Mondragon for the distribution of the marijuana and drove with Gutierrez in a semi-tractor trailer carrying the marijuana to a used truck lot in Dallas, where the marijuana was to be unloaded and distributed to Mondragon. On April 3, 2001, as the marijuana was being unloaded by the three men, police arrived and Gonzalez and Gutierrez were arrested. Mondragon fled but later surrendered to authorities.

Gonzalez was charged by indictment with conspiracy to distribute over 100 kilograms of marijuana and possession with the intent to distribute over 100 kilograms of marijuana. On July 2, 2001, Gonzalez pled guilty to the conspiracy charge pursuant to a plea agreement and agreed to cooperate with the Government. In turn, the Government agreed that "pursuant to U.S.S.G. § 1B1.8(a), any statements made by [Gonzalez] in the course of his promised cooperation [would] not be used against [him] when determining the applicable guideline range, except as provided in U.S.S.G. §

2

1B1.8(b)."[1]  The plea agreement also contained a standard waiver of appeal provision.

On August 13, 2001, a probation officer filed a pre-sentencing report ("PSR") which indicated Gonzalez's sentence should be enhanced because he had a leadership role in the offense.  On September 13, 2001, Gonzalez filed, under seal, objections to the PSR claiming, among other things, that he was not a leader and individuals who were following in a Suburban were the leaders.  On October 29, 2001, the probation officer filed an addendum to the PSR.  The addendum stated that Gonzalez did not serve in the same leadership role as the original PSR indicated but nonetheless was a leader and should still receive an enhancement for his role.

On October 26, 2001, Gonzalez participated in a debriefing

---

[1] Section 1B1.8(b) reads as follows:

(b) The provisions of subsection (a) shall not be applied to restrict the use of information:

(1) known to the government prior to entering into the cooperation agreement;

(2) concerning the existence of prior convictions and sentences in determining §4A1.1 (Criminal History Category) and §4B1.1 (Career Offender);

(3) in a prosecution for perjury or giving a false statement;

(4) in the event there is a breach of the cooperation agreement by the defendant; or

(5) in determining whether, or to what extent, a downward departure from the guidelines is warranted pursuant to a government motion under §5K1.1 (Substantial Assistance to Authorities).

3

session, prior to which defense counsel received a proffer letter from the Government containing the following condition: "No statements that either you or Mr. Gonzalez make during these discussions can be used as evidence against him in any civil or criminal proceedings except the Government may use such statements for the purpose of cross-examination, impeachment and rebuttal should your client testify at any proceeding contrary to this proffer." At the debriefing, Gonzalez told the Government about a Suburban carrying individuals that was traveling thirty minutes behind and had authorities waited they could have apprehended these individuals as well. Apparently, Gonzalez was the sole source of this information.

On October 29, 2001, a sentencing hearing was held in the Dallas Division of the United States District Court for the Northern District of Texas. The only contested issue at the hearing was whether Gonzalez's sentence would be enhanced by two levels, under U.S.S.G. § 3B1.1(c), because of a leadership role in the offense. If that role enhancement were not applied Gonzalez would be eligible for the safety valve.

At the sentencing hearing, the district court heard testimony from the Government's witness, DEA Agent Scott Modesitt, on the issue of whether Gonzalez had a leadership role in the offense. Agent Modesitt testified that he had been talking to a government informant when Gonzalez called the informant. Gonzalez asked the

4

informant to pick him up in Laredo, Texas, and take him to Dallas for the purpose of distributing the marijuana. Agent Modesitt sent the informant to Laredo and instituted surveillance. According to Agent Modesitt, his own surveillance and information provided by the government informant, Mondragon, and Gutierrez indicated Gonzalez's role was to make sure everybody got their share of the marijuana.

Throughout Agent Modesitt's testimony, the court questioned him in an effort to determine exactly what Gonzalez's role in the offense was. After Agent Modesitt completed his testimony, the district court was not certain Gonzalez had a leadership role and the court made the following statement:

> That is the point I am trying to make, that I was trying to make with the DEA Agent. This whole deal is a moving target. First "Gonzalez] is good for the three people coming up. Oh, no, wait. That is not the case."[2] Then it is Victor Mondragon, and they are doing this in the debriefing.[3] And you know what, I wouldn't buy a used car from either of them. And so if the DEA Agent knows something, that is golden. But if it is a bunch-- if everything is coming from a bunch of other criminals, I am not real big on taking that to the bank.
>     And you, [the prosecutor], are in the same boat, just like the probation officer. This deal is kind of fluid and moving. And then Victor [Mondragon] doesn't grace us with his presence this morning, so that really

---

[2] This comment refers to the fact that the probation officer retracted her original statement in the PSR that Gonzalez was responsible for sending three people to recruit a truck driver in Laredo to transport the marijuana to Dallas. *See* PSR Addendum, p. 3.

[3] This comment is based on the fact that some evidence from Victor Mondragon's debriefing indicated Mondragon was the leader who directed the other participants in the offense.

5

kind of makes his credibility dip a bit.[4]

After an extensive exchange between the Government, defense counsel and the court, the court asked, "Who brought the money to the party?  Who had the money?"  Defense counsel for Gonzalez replied that he did not believe there was any money at that point in the offense and the marijuana was to be spilt between Mondragon and the confidential source.

After a further exchange between defense counsel and the court concerning granting Gonzalez's objection to an enhancement for a leadership role in the offense and his eligibility for the safety valve, the court again asked who was going to pay for the marijuana.  Defense counsel replied with his understanding of the situation and then the Government made the following statement:

> Your Honor, if I may, during the debriefing on Friday, Mr. Gonzalez told us there was a Suburban carrying four individuals that would have arrived on the scene 30 minutes, had the agents waited another 30 minutes, and that they were supposed to get the majority of the marijuana, and that this confidential source and Mondragon were only suppose to get 200 to 300 pounds of it.  That information was not provided by anyone else. No one knew or mentioned the Suburban with four individuals.

Defense counsel responded:

> That is mostly true, except that the individuals in the Suburban were not supposed to get the portion of the marijuana; rather, they were supposed to supervise the distribution of their portion of the marijuana to Victor Mondragon.  Mr. Gonzalez's part was to make sure that

---

[4]  This comment refers to the fact that Victor Mondragon did not appear, as required, at the sentencing hearing possibly because he was feeling ill.

[the confidential informant] got the 200 to 300 pounds of marijuana that he was supposed to get.

In response to further questioning from the court, the Government stated that the information regarding the Suburban came only from Gonzalez-that neither the confidential source nor Mondragon told the Government about the Suburban.

The district court then stated:

The deal is-- it is all going back and forth, and like I said before, when I am dealing with a bunch of criminals I am not real confident about doing things to people that affect their liberty based upon what another criminal would say without some bit of corroboration. But let me tell you, you want to talk admissions against interest, the ultimate admission against interest is the Suburban, because if that didn't come from anywhere else, that shows that some type of planning or direction or some kind of involvement that gives credence to what everybody else was saying.
     I am going to resolve the matter against the defendant.

The district court then sentenced Gonzalez to 70 months' imprisonment, five years' supervised release, and a $100 special assessment.

The following day and prior to entry of judgment, Gonzalez filed, under seal, a motion for reconsideration, asking the court to withhold entry of judgment and to reconsider the sentence based on the assertion that the Government impermissibly used evidence obtained from Gonzalez's debriefing which violated the terms of the plea and proffer agreements and which led the court to assign an enhancement for Gonzalez's role in the offense. The Government objected to the motion, arguing that its revelation of the

7

information regarding the Suburban was sanctioned by the proffer agreement because it was disclosed solely in rebuttal to defense counsel's misstatement as to how the marijuana was to be distributed. Defense counsel argued that the transcript indicated he had not made a misstatement but rather was attempting to explain his understanding of the role of the individuals following in the Suburban and the distribution of the marijuana. On November 5, 2001, the district court orally denied the motion for reconsideration without making any findings. The court then entered judgment against Gonzalez, imposing the original sentence. Gonzalez filed a timely notice of appeal.

On appeal Gonzalez asserts that the Government breached the plea agreement, and violated his due process rights, and this caused the district court to contravene the Sentencing Guideline's proscription against using, to the detriment of the defendant, confidential information disclosed during the defendant's debriefing. The Government asserts the information concerning the Suburban had been disclosed earlier by Gonzalez in objections to the PSR and therefore was no longer privileged, that according to U.S.S.G. 1B1.8 the information can be disclosed but not "used against" the defendant, and any error by the court was harmless because there was ample independent evidence to support the court's decision to enhance the sentence by denying Gonzalez's objection that he did not have a leadership role in the offense.

**DISCUSSION**

The arguments asserted in this case are interwoven around the question of whether information Gonzalez provided in the debriefing was used against him which was a breach of the agreement between Gonzalez and the Government. Whether the Government's conduct violated the terms of the plea agreement is a question of law which this court reviews *de novo*.[5] ***United States v. Saling***, 205 F.3d 764, 766 (5th Cir. 2000). The party alleging a breach of the plea agreement bears the burden of proving the underlying facts establish a breach by a preponderance of the evidence. ***Wilder***, 15 F.3d at 1295. "In determining whether the terms of the plea bargain have been violated, [this] court must determine whether the government's conduct is consistent with the parties' reasonable understanding of the agreement." ***Id***. (internal quotations and citations omitted). Furthermore, where the government has breached or elected to void a plea agreement, the defendant is necessarily released from an appeal waiver provision contained therein. ***United States v. Keresztury***, 293 F.3d 750, 755 (5th Cir. 2002). If the

---

[5] The Government argues that Gonzalez is entitled to only plain error review because he failed to raise a contemporaneous objection at sentencing. Gonzalez, however, raised his objection before the district court entered judgment. Furthermore, Gonzalez raised his objection within the seven days required by Fed. R. Crim. P. 35(c) to correct a plain error such as the governments breach of a plea agreement. Fed. R. Crim. P.35(c); *see also **United States v. Wilder***, 15 F.3d 1292, 1301 (5th Cir. 1994) (finding that the "government's breach of a plea agreement can constitute plain error").

9

government breached its plea agreement, Gonzalez may seek one of two remedies: (1) specific performance, requiring that the sentence be vacated and that a different judge sentence the defendant; or (2) withdrawal of the guilty plea. *Saling*, 205 F.3d at 768.

Pursuant to the plea agreement and proffer letter, the Government could only disclose information obtained during the debriefing: (1) if one of U.S.S.G. § 1B1.8(b) exceptions applied; or (2) for the purpose of cross-examination, impeachment, or rebuttal if Gonzalez testified contrary to the proffer at any proceeding. The Government has never argued that any of the exceptions listed in § 1B1.8(b) apply. Nor does the Government argue on appeal that it was using the information as allowed under a provision in the proffer letter. Further, a plain reading of the proffer letter indicates that the parties' reasonable understanding would be that those provisions would only be triggered if Gonzalez testified in a proceeding. This does not, however, mean that mere disclosure of the information was a breach of the agreements.

"A prosecutor has a duty to insure that the court has complete and accurate information concerning the defendant, thereby enabling the court to impose an appropriate sentence." *United States v. Block*, 660 F.2d 1086, 1091 (5th Cir. 1981). As this court has held before, § 1B1.8 does not prohibit disclosure of information provided in a plea agreement at sentencing, but rather, it prohibits this information from being used to determine the

10

applicable guideline range. ***United States v. Taylor***, 277 F.3d 721, 724 n.4 (5th Cir. 2001); *see also* U.S.S.G. 1B1.8, comment. (n.1) (2000).

Because the Government's disclosure was used in this case to determine the applicable guideline, whether the Government's disclosure corrected a misstatement made by defense counsel is irrelevant. Accordingly, it is unnecessary to determine whether defense counsel actually made a misstatement. Likewise, the Government's contention that Gonzalez disclosed the same information earlier in objections to the PSR is similarly irrelevant, even assuming that Gonzalez did actually earlier disclose what the Government later used against him at the sentencing hearing. Gonzalez's objections, which were filed under seal, do not change the prohibition against the Government using information it obtained at the debriefing against Gonzalez at sentencing. According to our case law, the Government was not allowed to use the information against Gonzalez unless the Government can show that the information came from a wholly independent source. ***Taylor***, 277 F.3d at 726-27.

In this case, the information was used against Gonzalez to determine the applicable guideline range. The Government did not use the information concerning the Suburban in order to clear up a misunderstanding and then inform the court that such information could not be used against Gonzalez because of the plea agreement.

11

Rather, in the face of the court's doubts about whether Gonzalez had a leadership role, the Government argued, more than once, that only Gonzalez knew of the Suburban and this indicated he was a leader in the offense. Under the applicable preponderance of the evidence standard, keeping in mind the reasonable expectation of Gonzalez that his agreements prohibited information he provided the Government at debriefing from being used against him absent any exceptions, this agreement was breached.

Finally, the Government argues that the disclosure to the district court that no one else provided the Government with information about the Suburban is not privileged as to Gonzalez. Because questions of privilege and breaches of plea agreements do not involve the same legal principles, this argument only proves that the Government did not obtain the information from an independent source and therefore was prohibited from using such information against Gonzalez. To agree with the Government would open a backdoor to getting around plea agreements by allowing the Government to use information obtained pursuant to a plea agreement by claiming that they were not really "using" information but merely pointing out that the defendant was the sole source of such information. Likewise, the Government's contention that there was ample evidence supporting the district court's decision that Gonzalez had a leadership role is inapposite; and, furthermore, the transcript indicates the court clearly did not find any other

12

evidence sufficient to support such a finding. *See* **Saling**, 205 F.3d at 766-67 (holding that if a breach has occurred, the sentence must be vacated regardless of whether the court was influenced by the Government's actions).

## CONCLUSION

Having carefully reviewed the record of this case and the parties' respective briefings and oral arguments, for the reasons set forth above we conclude that the Government used information provided by Gonzalez at the debriefing against him and therefore breached the plea agreement. Therefore we VACATE Gonzalez's conviction and sentence and REMAND this matter to the district court for further proceedings before another judge.