# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 4, 2009

Charles R. Fulbruge III
Clerk

No. 08-10053

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

CARLY ELIZABETH ADAMS

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:07-CR-111-4

Before O'CONNOR, Associate Justice (Ret.),[*] WIENER and STEWART, Circuit Judges.

PER CURIAM:[**]

Defendant-Appellant Carly Elizabeth Adams pleaded guilty to possession of stolen mail in violation of 18 U.S.C. § 1708. She now appeals her sentence, claiming that the district court erred in applying an offense-level enhancement

---

[*] The Honorable Sandra Day O'Connor, Associate Justice of the United States Supreme Court, (Ret.), sitting by designation pursuant to 28 U.S.C. § 294(a).

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

for an offense that involved at least 50 but less than 250 victims. Finding no reversible error, we affirm.

## I. FACTS AND PROCEEDINGS

On January 17, 2007, Burleson (Texas) Police Department officers encountered two of Adams's co-defendants in a Wal-Mart parking lot. The officers took them into custody, at which time they asked the officers to deliver propane to Adams's residence so that Adams and others at the residence could have heat. When the officers arrived, they received Adams's permission to enter the home. The officers then observed in plain view various identifications, credit cards, and mail. They requested and obtained Adams's consent to search the residence. The search revealed additional credit cards and identifications as well as pieces of mail addressed to different locations and to individuals other than those living at the residence. A grand jury subsequently indicted Adams for possession of stolen mail in violation of 18 U.S.C. § 1708. Although Adams and the government did not reach a plea agreement, she pleaded guilty.

At Adams's preliminary hearing in the district court, Postal Inspector Mona Hernandez testified that she discovered more than 100 pieces of mail in the RV and, even though she did not "recall specifically," made a "rough estimate" that she had identified more than 50 victims. On cross-examination, Adams did not question Inspector Hernandez's estimate. The U.S. Probation Officer's pre-sentence report computed Adams's total offense level based on an enhancement pursuant to section 2B1.1(b)(2)(B) of the United States Sentencing Guidelines (the "Guidelines") for an offense that involved at least 50 but less than 250 victims. Adams filed objections to the pre-sentence report including, inter alia, a challenge to that enhancement because the pre-sentence report positively identified only 24 victims. The government explained that the pre-sentence report identified only those victims associated with restitution or loss-amount calculations, but that Inspector Hernandez had determined that there

were at least 50 "victims," a term defined to include each individual whose mail was taken without however requiring that any financial loss have been incurred.[1] The government also stated that at sentencing Inspector Hernandez would be available to testify. Indeed, Adams had the opportunity at sentencing to cross-examine Inspector Hernandez but asked no questions related to the enhancement for number of victims. The district court adopted the pre-sentence report's factual findings and enhanced Adams's offense level by four levels because the offense involved at least 50 but less than 250 victims. This timely appeal followed.

## II. ANALYSIS

### A.    Standard of Review

We review a district court's application of the Guidelines de novo and its factual findings for clear error.[2] A factual finding is not clearly erroneous as long as it is "plausible in light of the record as a whole."[3] "However, there must be an acceptable evidentiary basis for the court's factfindings at the sentencing hearing."[4] Recent Supreme Court cases addressing an appellate court's review of district court's sentencing decisions, e.g., Gall v. United States, Kimbrough v. United States, and Rita v. United States, do not "purport to alter our review of the district court's construction of the Guidelines or findings of fact."[5]

---

[1] The government also represented that its case agent had received additional information regarding the victims and that this information would be included in an addendum to the pre-sentence report. The government filed an addendum that did not disclose any specific victim-related information. It also appears that defense counsel never received such data.

[2] United States v. Cisneros-Guiterrez, 517 F.3d 751, 764 (5th Cir. 2008).

[3] Id. (internal quotation marks and citation omitted).

[4] United States v. Ayala, 47 F.3d 688, 690 (5th Cir. 1995).

[5] Cisneros-Guiterrez, 517 F.3d at 764 (citing Gall v. United States, 128 S. Ct. 586

## B.    Claimed Sentencing Error

The sole issue that Adams asks us to resolve is whether the government provided adequate evidence to support the district court's conclusion that she possessed the undelivered mail of at least 50 different victims.  The commentary to the Guidelines directs that in cases involving the taking of undelivered United States mail, the term "victim" includes "any person who was the intended recipient, or addressee, of the undelivered United States mail."[6]

The party that seeks an adjustment to the base offense level under the Guidelines, here the government, must prove by a preponderance of the evidence that the adjustment is warranted.[7]  In this case, the district court overruled Adams's objections and adopted the pre-sentence report and its addendum as the court's findings of fact.  Courts typically adopt a pre-sentence report's factual findings because,

> [g]enerally, a PSR bears sufficient indicia of reliability to permit the district court to rely on it at sentencing.  The PSR, however, cannot just include statements, in the hope of converting such statements into reliable evidence, without providing any information for the basis of the statements.  Normally, the defendant has the burden to show that the information relied on in a PSR is inaccurate.  The rebuttal evidence presented by the defendant must show that the PSR's information is materially untrue, inaccurate or unreliable.[8]

---

(2007); Kimbrough v. United States, 128 S. Ct. 558 (2007); Rita v. United States, 127 S. Ct. 2456 (2007)).

[6] U.S. SENTENCING GUIDELINES MANUAL § 2B1.1 cmt. n.4(C)(i) (2008); see United States v. Wise, 447 F.3d 440, 446 (5th Cir. 2006) (per curiam) ("[W]e must consider the commentary to the Guidelines as authoritative.").

[7] United States v. Dabeit, 231 F.3d 979, 983 (5th Cir. 2000) (per curiam), overruled on other grounds by United States v. Reyna, 358 F.3d 344, 347, 350 (5th Cir. 2004).

[8] United States v. Taylor, 277 F.3d 721, 724 (5th Cir. 2001) (internal quotation marks and citations omitted) (emphasis added); see also United States v. Alford, 142 F.3d 825, 832 (5th Cir. 1998) ("A district court may adopt facts contained in the PSR without further inquiry if the facts have an adequate evidentiary basis and the defendant does not present rebuttal

"[I]nformation in the PSR that is unrebutted by the defendant bears sufficient indicia of reliability to be considered evidence by the district court."[9] Further, mere objections are not competent rebuttal evidence.[10]

We have not had occasion to determine whether a district court may rely on an approximation of the number of victims for sentencing purposes in undelivered mail cases. Two related sentencing issues are instructive, however, in reaching our conclusion that, here, the district court did not clearly err.

First, the Guidelines commentary related to calculating the amount of loss caused by an offense[11] provides support by analogy for permitting estimations of the number of victims in an undelivered-mail case. When a court calculates the amount of loss, it "need only make a reasonable estimate of the loss" because "[t]he sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence."[12] A court bases its estimation on "available information" including various factors such as the "approximate number of victims multiplied by the average loss to each victim."[13] To permit or even require courts to approximate the number of victims when calculating enhancements for amount of loss, but to prohibit such approximations when

---

evidence."). Adams, citing Taylor, misinterprets the extent to which a district court is entitled to rely on a pre-sentence report. The burden to produce evidence rebutting a pre-sentence report is typically on the defendant. Taylor only states that a portion of this burden shifts to the government when a defendant enters a plea agreement involving use immunity. See 277 F.3d at 727. Adams did not enter into such an agreement.

[9] United States v. Roush, 466 F.3d 380, 388 (5th Cir. 2006).

[10] United States v. Solis, 299 F.3d 420, 455 (5th Cir. 2002).

[11] See U.S. SENTENCING GUIDELINES MANUAL § 2B1.1 cmt. n.3(C); see also id. § 2B1.1(b)(1).

[12] Id. § 2B1.1 cmt. n.3(C).

[13] Id. § 2B1.1 cmt. n.3(C)(iii) (emphasis added); see United States v. Krenning, 93 F.3d 1257, 1269 n.20 (5th Cir. 1996).

calculating enhancements for the number of victims would be illogical in the extreme.

Second, a commentary to the Guidelines explicitly permits approximations in at least one other context. In controlled-substance cases, approximations of drug quantity are sometimes permissible.[14] And, although a court's approximation must bear "sufficient indicia of reliability to support its probable accuracy," a district court is entitled to rely on the pre-sentence report in the absence of rebuttal evidence that demonstrates inaccuracy.[15] We have approved of such approximations even when a calculation's accuracy was questionable at best. For example, in United States v. Alford, the district court accepted the pre-sentence report's conclusion regarding the number of kilograms of marijuana that was attributable to the charged offenses.[16] On appeal, the defendant in Alford challenged the reliability of the pre-sentence report's calculation, arguing that it was based in part on the testimony of a witness who, on cross-examination, had conceded that the quantities to which he testified "were guesses and that the actual quantities could have been smaller."[17] Although in that defendant's view, the district court should have assumed a smaller quantity for sentencing purposes, we held that the district court did not clearly err in calculating the quantity of marijuana as it did.[18] "The fact that [the witness's] testimony was somewhat imprecise did not preclude reliance on it for sentencing

---

[14] See U.S. SENTENCING GUIDELINES MANUAL § 2D1.1 cmt. n.12 (allowing for approximations of the quantity of controlled substances when "there is no drug seizure or the amount seized does not reflect the scale of the offense").

[15] United States v. Franklin, 148 F.3d 451, 460 (5th Cir. 1998) (quoting U.S. SENTENCING GUIDELINES MANUAL § 6A1.3(a)); see United States v. Ayala, 47 F.3d 688, 690 (5th Cir. 1995).

[16] 142 F.3d 825, 832 (5th Cir. 1998).

[17] Id.

[18] Id.

purposes because a district court may consider 'estimates of the quantity of drugs for sentencing purposes.'"[19] Recognition that an amount could have been smaller was nothing more than an acknowledgment that the amounts were estimates rather than precise calculations.[20] Additionally, the defendant offered no rebuttal evidence to establish that the quantity of marijuana attributed to him in the pre-sentence report was materially untrue.[21] Under all the circumstances, the sentencing court's conclusion regarding quantity was plausible and thus not clearly erroneous.[22]

Even though the instant case is not drug-related, the Guidelines neither explicitly condone nor explicitly forbid approximations of the number of victims in undelivered mail cases. Moreover, the drug-calculation framework, when viewed in pari materia with the loss-calculation commentary, demonstrates the logic of permitting estimates of the number of victims in undelivered mail cases: The loss-calculation commentary confirms the propriety of permitting estimates, and our drug-quantity precedent establishes that reliance on even rough estimates does not constitute clear error per se.

Further, in United States v. Perez, an unpublished and thus non-precedential opinion, we considered a defendant's objection to the same enhancement Guideline as the one at issue in the instant case.[23] There, we held that the district court did not err in enhancing the defendant's sentence on the ground that there were at least 50 victims.[24] The district court had based its

---

[19] Id. (quoting United States v. Sherrod, 964 F.2d 1501, 1508 (5th Cir. 1992)).

[20] Id.

[21] Id.

[22] Id.

[23] 102 F. App'x 388, 389 (5th Cir. 2004) (per curiam) (unpublished).

[24] Id.

finding on the pre-sentence report and the testimony of an agent that "some 71 check-cashers and other endorsers were victimized."[25] Without further elaborating on the strength of the government's evidence, we concluded that the "evidence was plausible and uncontradicted by any defense evidence."[26] We thus held that the district court's factual finding of the number of victims was not clearly erroneous.[27] This disposition is consistent with finding no clear error when a district court relies on rough estimates of the number of victims.

Given this analysis, we hold that a district court does not clearly err per se in an undelivered mail case when it relies on a bona fide estimate of the number of victims. On the discrete facts of the instant case, the district court was free to disregard Adams's unsworn conclusional assertions that the pre-sentence report was inaccurate.[28] We have previously rejected a defendant's contention, unsupported by any rebuttal evidence, that a district court erred in crediting a portion of a pre-sentence report which stated that she stole $8,000.[29] Adams's case is not distinguishable: The mere observance that a pre-sentence report does not identify each victim by name does not constitute material rebuttal evidence. Further, when she had the opportunity to cross-examine Inspector Hernandez about her estimate of the number of victims, Adams failed to do so. Having failed to make any such effort or to present any rebuttal evidence, Adams has not established that the district court's factual determination lacks plausibility. And, the pre-sentence report's calculation is not merely a "bald assertion"; it is supported by Inspector Hernandez's

---

[25] Id.

[26] Id.

[27] Id.

[28] See United States v. Caldwell, 448 F.3d 287, 291 (5th Cir. 2006).

[29] See United States v. Parker, 133 F.3d 322, 329 (5th Cir. 1998).

testimony. The district court did not clearly err in making the factual determination that Adams's offense involved at least 50 but less than 250 victims.[30] Accordingly, we affirm the court's imposition of a four-level sentence enhancement pursuant to section 2B1.1(b)(2)(B) of the Guidelines and affirm the resulting sentence as well.

AFFIRMED.

---

[30] Our deferential standard of review dictates this result on the facts of the subject case. We note, however, that the district court adopted the pre-sentence report's factual finding and credited Inspector Hernandez's testimony based on scant evidence. Were we reviewing the district court's decision de novo, we would be troubled, perhaps dispositively so, by the lack of an explanation for the basis underlying the "rough estimate" of the number of victims.