NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 14-3744 and 14-3777
_____

UNITED STATES OF AMERICA

v.

RONZELL MITCHELL,
                    Appellant No. 14-3744

STEPHANIE MITCHELL,
                    Appellant No. 14-3777
_____

On Appeal from the District Court
for the District of New Jersey
(D.C. No.1-13-cr-00538-001)
(D.C. No. 1-13-cr-00537-001)
District Court Judge:  Honorable Renee M. Bumb
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 19, 2016

Before:  FISHER, CHAGARES and COWEN, *Circuit Judges*.

(Filed:  January 25, 2016)
_____

OPINION*
_____

_____

     * This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

FISHER, *Circuit Judge*.

Ronzell and Stephanie Mitchell each pleaded guilty, pursuant to plea agreements, and were sentenced based on a one-count information charging them with conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349. The Mitchells separately filed *pro se* appeals of their sentences, which were consolidated.[1] They appeal their sentences and assert that the Government and the District Court violated their due process rights. We will affirm.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts that are necessary to our analysis.

The Mitchells' convictions stem from a scheme to defraud the Department of Education ("DOE"). This scheme was implemented by the Mitchells and others who enrolled fictitious persons in online education programs in order to obtain federal student loans. Once the student loans were secured, the enrollee would withdraw and a member of the scheme would collect the loan refund from a specified address. The Mitchells were connected to two such addresses.

---

[1] The appellants are now represented by counsel and the *pro se* notices of appeals have been withdrawn.

After receiving proposed plea agreements from the Government, the Mitchells participated in proffer sessions and entered proffer agreements. Subsequently, the Mitchells signed the plea agreements. The plea agreements included a stipulation that the Mitchells were subject to a total offense level of 16 under the United States Sentencing Guidelines based on information and evidence obtained as of the date of the agreements ("the stipulation"). The stipulation did not include an enhancement for the number of victims. The Mitchells entered guilty pleas shortly after signing the plea agreements.

After the pleas, an initial pre-sentence report ("PSR") was completed by a probation officer. Based on proffered information provided by the Government's case agent, the PSR included a victim total of 361, requiring a six-level enhancement. A revised PSR included the same calculation. All parties objected to the victim calculation, and the Mitchells moved for a hearing based on their objections.

Thereafter, a second revised PSR was completed, which eliminated the proffered information. The second revised PSR reduced the number of victims to 23, requiring a two-level enhancement for 10 or more victims under § 2B1.1(b)(2) of the Guidelines.[2] After the second revised PSR was filed, the Government responded in opposition to the Mitchells' motions requesting a hearing. The Mitchells also filed sentencing memoranda. Each party cited *United States v. Kennedy*, 554 F.3d 415 (3d Cir. 2009), a case that

---

[2] Section 2B1.1(b)(2) requires a two-level enhancement for theft offenses that involve 10 or more victims. U.S. Sentencing Guidelines Manual § 2B1.1(b)(2) (U.S. Sentencing Comm'n 2014). "Victim" includes any individual whose means of identification was used unlawfully without authority." *Id.* at cmt. n.4(E).

defined "victims" as those persons who had suffered an "actual" financial loss. However, the Government stated in its brief that *Kennedy*'s definition is no longer applicable.[3] The Government thus confirmed that the second revised PSR was consistent with the facts but argued that an enhancement was not applicable based on the stipulation.

The District Court granted the Mitchells' motions for a hearing and ordered the Government to provide a witness to testify about the number of victims. At the hearing, the Government produced Debbie Mayer, a DOE representative. The Government elicited testimony from Mayer that at the time of the Mitchells' proffers, the Government could not prove with specificity that there were 10 or more victims. The District Court then questioned Mayer, who testified that the two addresses connected to the Mitchells encompassed 23 enrollees. Mayer relied on a spreadsheet that was completed prior to the proffers. Based on this evidence, the District Court found that the enhancement applied.

After the parties submitted another set of sentencing memoranda, the District Court held sentencing hearings. The District Court found, in pertinent part, that: (1) the pre-proffer spreadsheet included 10 or more victims but that the Government did not enter its agreements in bad faith; (2) the calculation of the number of victims was not based on proffered information; and (3) a two-level enhancement thus applied and the Mitchells were subject to a higher guideline range. The District Court then granted a two-level reduction based on the Government's § 5K1.1 motions, recognizing the Mitchells'

---

[3] The definition of "victim" was amended and does not require actual loss. U.S.S.G. § 2B1.1(b)(2), cmt. n.4(E).

4

cooperation. Based on these findings, Stephanie was sentenced to prison for 12 months and 1 day (a variance), and Ronzell was sentenced to 28 months' incarceration.

## II.

The District Court had jurisdiction over this criminal action under 18 U.S.C. § 3231. We have appellate jurisdiction over the Mitchells' challenges to their sentences under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We review the District Court's factual determinations regarding the proffer agreements for clear error and exercise plenary review over the Mitchells' assertions that the Government breached the plea agreements.[4]

## III.

In this appeal, the Mitchells argue that two entities violated their due process rights (A) the Government and (B) the District Court. We will discuss each in turn.

## A.

The Mitchells argue that the Government either entered the proffer agreements in bad faith or violated the plea agreements it made with them.

### 1. *Entering the Proffer Agreements*

Section 1B1.8 of the Guidelines restricts the use of self-incriminating information provided to the Government pursuant to a cooperation or proffer agreement in determining the applicable Guidelines range. However, this restriction does not extend to

---

[4] *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc); *United States v. Larkin*, 629 F.3d 177, 185 (3d Cir. 2010).

information known to the Government prior to entering the agreement.[5] The District Court found that the spreadsheet used by Mayer, the Government's witness, was available prior to the Mitchells' proffers. Having reviewed the record, including Mayer's testimony stating the same, this Court finds no error in that determination.

The Mitchells also cite *United States v. Taylor*, 277 F.3d 721 (5th Cir. 2001), and argue that the Government has failed to meet its burden of proving that the information in the PSR was not based on protected information. The Government met this burden as it provided a sworn witness, Mayer, who testified that the information in the PSR was derived from the pre-proffer spreadsheet.[6] Accordingly, the District Court did not err.

Finally, Mayer indicated that at the time of the proffers the Government could not prove with specificity that the Mitchells were connected to 10 or more victims. The Government also acknowledged this throughout the sentencing proceedings. The District Court's finding that the Government did not act in bad faith was thus not clear error.

2.      *The Government's Post-Proffer Conduct*

Allegations that a plea agreement was violated are analyzed under contract law standards.[7] This analysis requires this Court to determine "whether the government's conduct falls within the range of expectations reasonably understood by" the Mitchells

---

[5] *United States v. Baird*, 218 F.3d 221, 231 (3d Cir. 2000). This restriction applies both to government attorneys and probation officers who prepare PSRs. *Id.* at 228.

[6] *Compare with*, *Taylor*, 277 F.3d at 726-27 (finding that the Government failed to show that the PSR did not contain proffered information because the Government did not provide any sworn testimony to support its assertions).

[7] *Larkin*, 629 F.3d at 186.

when they entered the agreements.[8] We proceed by (1) considering the pertinent content of the agreements and the Government's alleged improper conduct; (2) determining whether that conduct violated the Government's obligations; and (3) applying an appropriate remedy if a violation did occur.[9]

The proffer agreements stated that the Mitchells' proffered statements could not be used for purposes of sentencing, subject to certain exceptions. One of those exceptions was that the Government could disclose information to the probation officer or to the District Court to determine where the Mitchells should fall within their applicable Guidelines ranges. The agreements also included an exception for derivative investigations and evidence gained from those investigations. However, the parties stipulated in the plea agreements that neither party would seek a departure or variance from a total offense level of 16. On the other hand, those agreements stated that the District Court was not bound by the stipulation.

The parties agree that the Government implicitly agreed to not seek a § 2B1.1 enhancement. The Mitchells contest, however, the Government's case agent's provision of proffered information to the probation officer. Further, they assert that the Government should have told the District Court that it could not seek out or create new evidence to support an enhancement—including providing a witness. They also argue that the Government should not have confirmed that the PSR was factually correct.

---

[8] *Id.*
[9] *Id.*

The Government did not violate the Mitchells' agreements. The proffered information provided by the case agent was removed in the second revised PSR. The Mitchells were sentenced based on that PSR. Further, even when the Government is restricted from arguing for an enhancement, it is still obligated to pass along unprotected information to the probation officer.[10] The Government fulfilled that obligation. The Mitchells could not have reasonably understood their agreements to require less.

We have also recognized that the Government does not have to endorse a plea agreement's terms enthusiastically but must strictly adhere to the terms of the stricken bargain.[11] This is coupled with the requirement that the Government (1) respond to court orders, even if doing so requires an assessment of the law that may not support a stipulation; but also (2) consistently argue for a sentence within the stipulation.[12] Here, the Government underwent a limited examination of Mayer that merely verified its assertion that it was unable to prove with specificity, at the time of the proffers, that there were 10 or more victims. The Government also consistently argued that the stipulation should apply and an enhancement should not. Finally, the Government was required to provide a correct definition of "victim" under applicable law. Thus, the Government's actions were what would be expected with a reasonable understanding of the agreements.

---

[10] *Id.* at 188.

[11] *United States v. Davenport*, 775 F.3d 605, 609 (3d Cir. 2015)

[12] *Larkin*, 629 F.3d at 189, 192.

B.

The Mitchells argue that the District Court violated their due process rights by conducting a searching inquiry into the stipulation's accuracy. "[A] sentencing court is not bound by factual stipulations in a plea agreement and has discretion to make factual findings based on other relevant information."[13] Thus, if a PSR recommendation differs from a stipulation, the court may investigate and call witnesses to support its Guidelines findings where it is concerned about a stipulation's accuracy.[14]

The District Court was allowed to request further information from the Government because of the contrast between the stipulation and the PSR's enhancement. The District Court noted its concerns with the stipulation, allowed briefing by the parties, and held a hearing at the Mitchells' request. The District Court ordered the Government to provide a witness at that hearing to ensure a correct Guidelines calculation. The Mitchells also acknowledged in the plea agreements, and at their plea hearings, that the District Court was not bound by the stipulation. These actions allowed the District Court to fulfill its duty at step one of the sentencing process.[15] Consequently, the Mitchells' due process rights were not violated.

---

[13] *United States v. Maurer*, 639 F.3d 72, 81 (3d Cir. 2011) (internal quotation marks and citation omitted).

[14] *United States v. DeWitt*, 366 F.3d 667, 671 (8th Cir. 2004); *see also Larkin*, 629 F.3d at 189-91 (recognizing the tension created when a district court requests information from the Government because of differences between the PSR and a stipulation).

[15] *United States v. Kluger*, 722 F.3d 549, 556 (3d Cir. 2013) (step one requires that the District Court correctly calculate the advisory Guidelines range).

IV.

For the reasons set forth above, we will affirm the order of the District Court.