# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 14, 2021

Lyle W. Cayce
Clerk

No. 20-40157

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

STEWART KILE WILLIAMS,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:18-CR-663-1

Before HIGGINBOTHAM, COSTA, and OLDHAM, *Circuit Judges*.
ANDREW S. OLDHAM, *Circuit Judge*:

The question presented is "Where's the beef?" *Wendy's Kind of Commercial*, BROADCASTING, Mar. 26, 1984, at 57. Stewart Kile Williams pleaded guilty to four counts of wire fraud for purporting to broker cattle deals worth millions of dollars, pocketing the money, and then disappearing the herd. The district court ordered more than $2 million in restitution. Williams challenges that award on the ground that the Government failed to prove which cattle he sold and which he stole. We affirm.

No. 20-40157

## I.

## A.

For three years, Williams brokered cattle sales between Jones Alto Colorado Ranch and Wyatt Ranches of Texas. Wyatt Ranch bought the cattle. Jones Ranch sold them. And Jones Ranch paid Williams one third of its profits from the sales.

The transactions began in late 2015. The first sale went off without a hitch. A few months later, in January of 2016, Williams made a second sale to Wyatt Ranch. This sale did not go as smoothly as the first order, but Wyatt Ranch received the cattle. So far, so good.

In March of 2016, Williams made a third sale to Wyatt Ranch. Wyatt Ranch purchased black cows. But when the cows arrived, Wyatt Ranch was dissatisfied. Not only were they delivered late, they had "problems." Some were the wrong color, some were barren and had no udders, and some were sick or had died. Wyatt Ranch said no dice; it returned the defective cattle.

Bradford Wyatt, the administrator of Wyatt Ranch, complained to Williams and threatened to sue Jones Ranch based on the defective cattle. Williams made excuses and persuaded Wyatt Ranch not to sue by promising to provide additional cattle to make up for Wyatt Ranch's losses. Williams eventually finalized the purchase, and he even threw in an extra $30,000 worth of cattle. But Bradford Wyatt remained dissatisfied and decided Wyatt Ranch was "done with Williams."

Williams, however, wasn't done with Wyatt Ranch. Though Bradford Wyatt stopped ordering cattle, Williams didn't tell that to Jones Ranch. Instead, Williams pretended *to be* Bradford Wyatt. Williams got a new phone number and an email address (Bradford.a.Wyatt@outlook.com) and gave them to Jones Ranch. Then Williams used his fake identity to purchase more

2

cattle from Jones Ranch. Williams forged Bradford Wyatt's signature on purchase orders. And when Jones Ranch attempted to contact Wyatt Ranch personnel, Williams responded—pretending to be Bradford Wyatt.

Under the pretense that "Bradford Wyatt" could not afford to prepay Jones Ranch for the cattle, Williams convinced Jones Ranch to front almost $2,000,000 to facilitate the sales. Jones Ranch paid some of that money to Williams directly; it paid some to various other ranches to purchase cattle for "Bradford Wyatt"; and it paid some to facilitate the storage, transportation, and feed of cattle that Williams fraudulently ordered. Jones Ranch's losses included:

- December 8, 2015: Jones Ranch transferred $105,000 to Williams;

- February 2, 2016: Jones Ranch transferred $61,224 to Williams (including $25,244 for a feed mixer);

- March 21, 2016: Jones Ranch transferred $285,000 to Williams;

- April 18, 2016: Jones Ranch transferred $85,200 to Jordan Cattle Auction;

- May 12, 2016: Jones Ranch transferred $601,150 to Williams;

- July 25, 2016: Jones Ranch transferred $303,000 to Williams;

- September 7, 2016: Jones Ranch transferred $369,175 to Jordan Cattle Auction;

- March 24, 2017: Jones Ranch transferred $143,500 to Maddux Cattle Co.;

- July 18, 2017: Jones Ranch issued a cashier's check in the amount of $185,000 to Cross M. Cattle; and

No. 20-40157

- August 24, 2017: Jones Ranch issued a cashier's check in the amount of $58,500 to Williams's company, Casa Cattle.

Although Jones Ranch made these transfers to Williams and other entities, "Bradford Wyatt" missed several payments. So Jones Ranch sought a promissory note and security agreement to protect itself. Williams signed the promissory note and security agreement—again doing so under the false pretense of being Bradford Wyatt.

Eventually, Jones Ranch contacted Wyatt Ranch about its failure to pay. Bradford Wyatt was confused—he hadn't authorized an order or received any cattle since March of 2016. Jones Ranch called the number Williams had provided. When Williams answered, he pretended to be Bradford Wyatt. But upon learning that the *real* Bradford Wyatt was on the line, Williams confessed.

## B.

A grand jury charged Williams with four counts of wire fraud in violation of 18 U.S.C. § 1343 and one count of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). Williams pleaded guilty to the wire-fraud counts. Under his plea agreement, Williams waived his right to appeal.[*] In exchange, the Government dropped the aggravated-identity-theft charge.

The principal dispute at sentencing was how to quantify the losses Williams imposed on his victims. To determine the custodial sentence, the district court turned to the U.S. Sentencing Guidelines. Under those Guidelines, the offense level for wire fraud is based on the greater of the actual *or intended* loss. *See* U.S.S.G. § 2B1.1 cmt. n.3(A). Using that definition

---

[*] The parties agree that the appeal waiver in Williams's plea agreement does not bar his challenge to the restitution order. They correctly interpret Fifth Circuit precedent on this point. *See United States v. Leal*, 933 F.3d 426, 430–31 (5th Cir. 2019).

No. 20-40157

of the loss amount, the Pre-Sentence Report ("PSR") recommended an offense level of 25:

| U.S.S.G. | Description | Offense Level |
|---|---|---|
| § 2B1.1(a)(1) | Base offense level for wire fraud, § 1343 | 7 |
| § 2B1.1(b)(1)(I) | Intended loss amount of $2,574,500 | +16 |
| § 2B1.1(b)(17)(A) | Deprived financial institution of $2,196,749 in gross receipts | +2 |
| **Total** | | **25** |

The district court accepted the PSR's loss estimates. Using an offense level of 25 and Williams's criminal-history category of II, the PSR recommended a Guidelines range of 63 to 78 months. After hearing passionate victim-impact testimony about the "devastating" effect of Williams's fraud on Jones Ranch, the district court imposed a within-Guidelines sentence of 70 months in prison.

The district court then scheduled a separate hearing to determine its restitution award. The Mandatory Victim Restitution Act ("MVRA") mandates restitution to victims of offenses under Title 18 that are "committed by fraud or deceit." 18 U.S.C. § 3663A(c)(1)(A)(ii); *see United States v. Shelton*, 694 F. App'x 220, 223 (5th Cir. 2017) (per curiam). That obviously includes wire fraud. The MVRA also requires restitution for offenses "in which an identifiable victim or victims has suffered a . . . pecuniary loss." 18 U.S.C. § 3663A(c)(1)(B). That obviously includes Jones Ranch. But unlike the Guidelines—under which *intended* losses can affect a custodial sentence—"[t]he MVRA limits restitution to the *actual* loss directly and proximately caused by the defendant's offense of conviction." *United States v. Sharma*, 703 F.3d 318, 323 (5th Cir. 2012) (emphasis added).

No. 20-40157

At its restitution hearing, the district court examined the disputed losses. For each line item, the district court credited a victim-impact statement averring that the expense constituted an actual loss. It then gave Williams an opportunity to rebut the Government's evidence. Williams responded that he couldn't show which payments resulted in a loss and which didn't: "[I]n a sense my hands are somewhat tied in being able to rebut these things . . . it's almost impossible to parse out what is legitimate and what allegedly is not."

The district court noted that the Government submitted evidence, victim-impact statements, and the PSR to justify each of its loss amounts—with two exceptions. First, Jones Ranch received the mixer it purchased from Williams. And second, the district court concluded that the $105,000 payment made in December of 2015 fell outside of Williams's fraudulent scheme. The district court excluded those two amounts from Jones Ranch's losses, leaving a final tally of $2,066,525. The district court entered an MVRA restitution award for that amount. Williams timely appealed.

## II.

We review the legality of an MVRA award de novo, and we review its amount for abuse of discretion. *See United States v. Mathew*, 916 F.3d 510, 515 (5th Cir. 2019). "The finding regarding the amount of loss is a factual finding [reviewed] for clear error." *Id.* at 516. And the district court's finding isn't clearly erroneous if it's "plausible in light of the record as a whole." *Ibid.* (quoting *United States v. Harris*, 597 F.3d 242, 250 (5th Cir. 2010)).

We start as always with the text of the statute. As relevant here, the MVRA requires a restitution award to reflect "the value of the . . . loss." 18 U.S.C. § 3663A(b)(1)(B)(i)(I). We have interpreted that provision to mean *actual* loss, not intended loss. *See, e.g.*, *United States v. Beydoun*, 469 F.3d 102,

107 (5th Cir. 2006) ("The MVRA does not permit restitution awards to exceed a victim's loss. . . . The court may not award the victim a windfall.").

The MVRA further says "[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government." 18 U.S.C. § 3664(e). The same provision also says, however, "[t]he burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires." *Ibid.* We have interpreted these two statutory sentences to establish a burden-shifting framework for loss-amount calculations. The Government first must carry its burden of demonstrating the actual loss to one or more victims by a preponderance of the evidence. Then the defendant can rebut the Government's evidence. *See, e.g.*, *Sharma*, 703 F.3d at 325 (noting that we've "approved the transfer of at least a portion of the burden to a defendant to establish his entitlement to a restitution credit" in several cases); *United States v. Loe*, 248 F.3d 449, 470 (5th Cir. 2001) (affirming the rejection of a restitution credit where the defendant "was unable to provide reliable evidence supporting its [offset] claims"); *United States v. Sheinbaum*, 136 F.3d 443, 449 (5th Cir. 1998) (stating the defendant bore "the burden of proving an offset" to restitution for any amounts it paid the victim in a civil settlement).

Here the Government easily met its burden. It led the district court through each and every line item in its restitution request. For each one, the Government offered victim-impact testimony swearing that money was paid and nothing was received. The Government also offered the PSR's findings, which the district court previously accepted. *See Sharma*, 703 F.3d at 323 (noting a district court can rely on actual-loss amounts in the PSR if the amounts have "an adequate evidentiary basis and remain[] unrebutted by the defendants"). Based on the evidence, the district court found that Jones Ranch did not suffer an actual loss of two expenses: (1) the $105,000 payment

in December of 2015, and (2) the mixer received by Jones Ranch. The district court gave Williams credit for both and then ordered restitution for the balance. The district court did not err, much less clearly err or abuse its discretion.

Our decision in *United States v. Antonucci*, 667 F. App'x 121 (5th Cir. 2016) (per curiam), is not to the contrary. In that case, the district court did not analyze each of the victim's expenses to ensure they were actual losses; the court instead presumed that all charges the defendant made using his employer's credit card constituted "loss." *Id.* at 123. On appeal, the Government conceded that was an erroneous methodology because it might've approximated the victim's losses but certainly didn't measure *actual* losses. *Id.* at 124.

This case is very different. Here the Government concedes nothing. And here the district court approximated nothing. It went through the data itself, considered the testimony and evidence, and found that each line item individually constituted an actual loss by a preponderance of the evidence.

The Government bore its burden of proving an actual loss of $2,066,525. Williams's only response is that he cannot rebut the Government's evidence because he did not keep records of where the legal beef sales ended and the fraudulent ones began. That won't cut it.

AFFIRMED.