# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
May 5, 2023

Lyle W. Cayce
Clerk

No. 22-10697

United States of America,

*Plaintiff—Appellee*,

*versus*

Devonsha Richardson,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:22-CR-38-4

_____

Before Clement, Graves, and Higginson, *Circuit Judges*.
Stephen A. Higginson, *Circuit Judge*:

In 2022, Defendant-Appellant Devonsha Richardson pleaded guilty to one count of Hobbs Act robbery. As part of Richardson's sentence, and over his objection, the district court ordered Richardson to pay $5,000 in restitution to Parks Food Mart, the store he robbed. Richardson appeals this order of restitution on two grounds: first, that the district court erred in imposing restitution to a business entity and second, that the district court erred by ordering restitution in the amount of $5,000. For the reasons given below, we AFFIRM AS MODIFIED.

No. 22-10697

## I.

First, Richardson contends that the district court erred in ordering restitution to be paid to Parks Food Mart, a business entity, because a "victim" eligible for restitution under the MVRA must be a natural person. We review the legality of an MVRA award *de novo*. *United States v. Williams*, 993 F.3d 976, 980 (5th Cir. 2021). The MVRA defines "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered . . . ." 18 U.S.C. § 3663A(a)(2). Richardson focuses on the use of the word "person," suggesting that the natural definition of the term excludes corporate entities and other organizations.

This reading, however, ignores that the broadly applicable statutory definition of "person" "include[s] corporations, companies, associations, firms, partnerships, societies, and joint stock companies." 1 U.S.C. § 1; *see also Vt. Agency of Nat. Res. v. U.S. ex rel Stevens*, 529 U.S. 765, 782 (2000) (noting that corporations are "presumptively *covered* by the [statutory definition of the] term 'person'"). Accordingly, we have routinely found that restitution may be ordered to non-natural persons. *See, e.g.*, *United States v. Mathew*, 916 F.3d 510, 518 (5th Cir. 2019) (holding that although the district court erred in awarding restitution to Medicare for losses that preceded the temporal scope of the offense of conviction, restitution as to the loss amount caused by the conduct underlying the offense of conviction was lawful); *United States v. Sharma*, 703 F.3d 318, 324 (5th Cir. 2012) (noting that insurers can be victims under the MVRA and explaining how to calculate the actual loss in such cases); *United States v. Taylor*, 582 F.3d 558, 562, 568 (5th Cir. 2009) (affirming a restitution award to FEMA). As Richardson himself concedes, this approach is in accord with all other circuits to have considered the issue. *See, e.g.*, *United States v. Donaby*, 349 F.3d 1046, 1052 (7th Cir. 2003) (concluding that because a police department was "directly and

proximately harmed" by the offense conduct, it qualified as a "victim" under the MVRA and affirming an order of restitution for property damage caused by a robbery); *United States v. Washington*, 434 F.3d 1265, 1266 (11th Cir. 2006) (same).

Nonetheless, Richardson argues that this precedent has been undermined, if not outright overturned, by the Supreme Court's decision in *Lagos v. United States*, 138 S. Ct. 1684 (2018). In *Lagos*, the Supreme Court addressed the scope of the words "investigation" and "proceedings" under Section 3663A(b)(4)—specifically, whether to adopt a narrow interpretation in which the terms are limited to government investigations and criminal proceedings or to adopt a broader reading which additionally encompassed private investigations and civil proceedings. *Id.* at 1687. In holding that the narrower interpretation applied, the Supreme Court primarily looked to the statute's wording, although it also recognized, as a practical matter, that a broad reading of the statute could result in more conflict as to the MVRA's coverage and correspondingly increase administrative burdens. *Id.* at 1689.

Richardson reads *Lagos* to stand for the proposition that the MVRA must be read narrowly, including as to the definition of "victim." But nothing in *Lagos* suggests that its holding extends so far—indeed, *Lagos* itself cabined its discussion of the benefits of a "narrow" rather than "broad" reading to the specific provision at issue. *See id.* at 1689 (discussing how a broad reading of the term "other expenses" could invite disputes over whether particular expenses qualified under the statute). If anything, *Lagos* directly acknowledged that a victim under the MVRA could be a corporation. *See id.* at 1688 (noting that certain kinds of expenses are "the kind of expenses that victim would be likely to incur when he or she (*or, for a corporate victim . . . , its employees*) misses work . . . .") (emphasis added). In fact, *Lagos* involved consideration of a restitution order to a corporation—General Electric. *Id.* at 1687.

Even after *Lagos*, we have explicitly recognized that corporate victims may receive restitution under the MVRA. *United States v. Koutsostamatis*, 956 F.3d 301, 308 (5th Cir. 2020) ("That's not to say a corporate victim cannot receive restitution under the MVRA—far from it."). We do the same today, and find that the district court did not err in ordering restitution to Parks Food Mart.

## II.

Next, Richardson argues that even if Parks Food Mart was a proper victim under the MVRA, the district court erred as to the amount ordered. We review the amount of restitution awarded for abuse of discretion. *Williams*, 993 F.3d at 980. Under the MVRA, restitution is limited to "the actual loss directly and proximately caused" by the offense of conviction. *Sharma*, 703 F.3d at 323. In other words, "[t]he MVRA does not permit restitution awards to exceed a victim's loss. . . . The court may not award the victim a windfall." *United States v. Beydoun*, 469 F.3d 102, 107 (5th Cir. 2006).

The MVRA states both that "[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government," and that "[t]he burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires." 18 U.S.C. § 3664(e). We have read these two sentences to establish a burden-shifting framework for loss-amount calculations in which "[t]he Government first must carry its burden of demonstrating the actual loss to [the victim] by a preponderance of the evidence," after which "the defendant can rebut the Government's evidence." *Williams*, 993 F.3d at 980-81.

The district court ordered restitution in the amount of $5,000, the amount recommended by probation in the presentence report ("PSR"). The

probation officer calculated the total loss incurred by Parks Food Mart to be $5,000—$1,000 for money and merchandise stolen during the robbery and $4,000 for the lost income from the store closure caused by the robbery and subsequent investigation. In calculating the total amount of loss, a district court "may adopt the facts contained in a presentence report without further inquiry if those facts have an adequate evidentiary basis with sufficient indicia of reliability and the defendant does not present rebuttal evidence or otherwise demonstrate that the information in the PSR is unreliable." *United States v. Smith*, 528 F.3d 423, 425 (5th Cir. 2008).

Richardson did not present any rebuttal evidence at sentencing, although he did file written objections to the PSR's calculation of restitution. Specifically, Richardson attacks both the $1,000 loss calculated for stolen money, which he claims lacks an adequate evidentiary basis, and the $4,000 loss calculated for lost income, which he claims was improperly calculated. We address each in turn.

## A.

To begin, we evaluate the $1,000 loss calculated as to the stolen property. Where an offense results in the loss of property (and that property is not returned), the MVRA orders restitution in an amount equal to the greater of either the value of the property on the date of loss or the value of the property on the date of sentencing. § 3663A(b)(1)(B).

During the robbery, Richardson stole approximately $600 in cash from the register, a stack of approximately seventy-five lottery tickets, and a Beretta .45-caliber semiautomatic handgun. To establish the amount of cash stolen, the probation officer interviewed the store's manager, who was also a victim of the offense. As for the value of the tickets, the probation officer recorded that the lottery tickets were worth $5 and Parks Food Mart would have earned a 5% commission on any tickets sold, as well as a potential bonus

if any of the tickets were high-value winners. Assuming the value of each lottery ticket to be at least $5, the total loss for the seventy-five tickets is $375. Adding that value to the $600 in stolen cash, we reach a total loss of $975 without accounting for the stolen gun. From there, all that is needed to reach the PSR's $1,000 calculation is an assumed value of at least $25 for the stolen gun. We find this calculation reasonable.

Nonetheless, Richardson disputes this value. First, he suggests that the Government was required to conduct some sort of forensic accounting to prove the loss of cash. Richardson provides no case law to support this contention, and we have held that a PSR is sufficiently reliable where the probation officer reviewed investigative materials and interviewed a victim. *United States v. Ollison*, 555 F.3d 162, 164 (5th Cir. 2009). Accordingly, the district court was entitled to rely on the PSR's calculation as to the amount of cash stolen.

Additionally, citing *United States v. Kim*, 988 F.3d 803, 813 (5th Cir. 2021), Richardson argues that using the retail value of the stolen lottery tickets, rather than net profit, results in a "windfall" to Parks Food Mart. *Kim*, however, is inapposite—there, we considered how to calculate the actual loss to a victim caused by the introduction of counterfeit or infringing goods into the stream of commerce, displacing legitimate sales from the victim. *Id.* In such cases, basing restitution on the retail value would fail to account for the cost of manufacturing and selling the legitimate goods. *Id.* This case, however, involves a straightforward robbery, where the loss is simply the value of the stolen goods. *See, e.g.*, *United States v. Hilliard*, 578 F. App'x 439, 442 (5th Cir. 2014) (per curiam) (affirming a restitution order in the amount of the value of the cash stolen plus the price of an iPad in connection with a conviction for a conspiracy to steal Government property).

Finally, Richardson points out that the PSR contained no information as to the replacement value of the stolen gun. Yet, given that the stolen cash and lottery tickets together accounted for, at minimum, $975, we do not find any abuse of discretion in adopting the PSR's recommendation of a $1,000 loss for stolen merchandise.

## B.

Next, we turn to the $4,000 calculated for lost income. The MVRA directs the district court to "reimburse the victim for lost income . . . and other expenses incurred during participation in the investigation or prosecution of the offense." § 3664A(b)(4). Here, Parks Food Mart was closed for approximately 6 hours on a Monday, from 6:15 p.m. to midnight, as law enforcement investigated the robbery. In the original PSR, the probation officer reported only that the business had suffered "$4,000 from missed earnings while being closed for investigation." After Richardson objected to this calculation, the probation officer conducted a follow-up interview with the manager of Parks Food Mart. During this interview, the manager estimated that the store averaged $3,500 in sales on an average Monday, with peak hours between 4:00 p.m. and 9:00 p.m. Based on this estimate, probation determined that $4,000 was a reasonable estimate for lost earnings caused by a closure during some of the most profitable hours of the day.

Richardson does not dispute that Parks Food Marts was entitled to restitution for the income it lost during the time the store was closed for investigation into the robbery. Rather, Richardson takes issue with the amount ordered. Specifically, Richardson argues that the Government failed to properly support the $4,000 figure.

First, Richardson contends that the district court improperly awarded $4,000 in lost *earnings*, rather than lost *income*. It is true that the MVRA

No. 22-10697

provides only for restitution for income, not earnings. But it is also true that "income" and "earnings" can, in some instances, be used interchangeably.[1] *Compare Income*, Black's Law Dictionary (11th ed. 2019) ("The money or other form of payment that one receives, usu. periodically, from employment, business, investments, royalties, gifts, and the like. See Earnings. Cf. Profit."), *with Earnings*, Black's Law Dictionary (11th ed. 2019) ("Revenue gained from labor or services, from the investment of capital, or from assets. See Income."). We do not find, and Richardson provides no case law to support, that the mere fact that the PSR did not contain the exact terminology used by the MVRA when describing the victim's loss and instead used a term with a very similar meaning invalidates the district court's determination of restitution.

Assuming that lost earnings is the appropriate metric, Richardson alternatively maintains that the PSR (and, by extension, the Government) failed to provide an adequate evidentiary basis for the $4,000 figure. We assume that the first version of the PSR, which contained only the victim's claimed loss amount and nothing more, may not have contained adequate evidentiary support. *See United States v. Young*, 272 F.3d 1052, 1056 (8th Cir.

---

[1] In his reply brief, Richardson also claims that the $4,000 was improper because it represented a loss of gross sales and did not account for the costs related to generating those sales. In other words, Richardson argues that profit is the proper measure of loss. *See Profit*, Black's Law Dictionary (11th ed. 2019) ("The excess of revenues over expenditures in a business transaction; Gain. Cf. Earnings; Income."). Again, however, Richardson cites no case law to support this position. In certain counterfeiting cases, we have stated that the relevant metric is net profit, not gross income. *See, e.g.*, *Beydoun*, 469 F.3d at 108; *Kim*, 988 F.3d at 812-13. These cases, however, involved the calculation of the actual loss caused by the conduct underlying the offense, ***not*** the reimbursement of lost income caused by the victim's participation in the investigation. *See Beydoun*, 469 F.3d at 107-08 (calculating the loss caused by the defendants' creation of counterfeit booklets); *Kim*, 988 F.3d at 813 (noting that using the retail value, rather than the net profit, to measure actual loss caused by the introduction of counterfeit goods into the market could result in a windfall to the victim).

2001) (finding that a PSR did not contain sufficient factual allegations substantiating the victim's proposed loss amount where the PSR "simply recounted the victim's estimate of lost retail sales," had no further verification of that estimate, and the PSR itself acknowledged that the amount of restitution was uncertain).

But here, the district court did not just have access to the first version of the PSR: it also had access to the addendum produced by the probation officer who, in response to Richardson's objection, conducted a follow-up interview to confirm the claimed loss amount. At this point, he was informed by the store manager that Parks Food Mart averaged around $3,500 in sales on Mondays.[2] Of course, the nature of an average is such that some Mondays may experience higher sales while others lower. In other words, we understand that sales are variable and there may have been reason for Parks Food Mart, in stating that the store closure resulted in $4,000 in lost earnings, to expect sales on the higher end the day of the robbery. At the same time, however, we recognize that the store closure only impacted part of the day, albeit during peak hours. Given these competing tensions, and the lack of any other documentation as to the store's losses, we find the $3,500 figure to be a better-supported estimate of lost sales. Accordingly, we modify the judgment to reduce the restitution ordered to be paid to Parks Food Mart to

---

[2] Both on appeal and in district court, Richardson argued that some sort of documentation was required to verify this estimate. That is not so—the probation officer was entitled to rely on an interview with an employee of the store to calculate the loss. *See Smith*, 528 F.3d at 425 (rejecting the defendant's argument that the Government was required to produce a sworn affidavit or present live testimony as to the amount of loss and holding that the district court could rely on the amount contained in the PSR, where that amount was based on an interview of the employee of the victim and the defendant did not present any rebuttal evidence at sentencing).

No. 22-10697

$3,500. *See* 28 U.S.C. § 2106; *United States v. Emasealu*, 779 F. App'x. 283, 284 (5th Cir. 2019) (per curiam).

*********

For the foregoing reasons, we AFFIRM AS MODIFIED the district court's restitution order.

No. 22-10697

James E. Graves, Jr., *Circuit Judge*, dissenting in part:

I disagree with the majority's "find[ing]" that $3,500 is the proper amount of restitution for lost sales.  Further, nothing in the record supports the majority's statement that "there may have been reason for Parks Food Mart, in stating that the store closure resulted in $4,000 in lost earnings, to expect sales on the higher end the day of the robbery."  If there had been, the government could have easily established that.  It did not.

Instead, the addendum to the PSR explicitly states multiple times that the manager "estimated the store typically averaged $3,500 in sales on an average Monday."  Based on that, the probation officer then made the unsupported conclusion that, "[t]hus, the estimate of $4,000 may be reasonable for lost earnings."  This court has previously said that unsupported conclusions lack sufficient indicia of reliability.  *See United States v. Shacklett*, 921 F.2d 580, 584 (5th Cir. 1991).

Moreover, the caselaw requires the restitution amount is supported by the evidence in the record.  *See United States v. Sharma*, 703 F.3d 318, 323 (5th Cir. 2012) ("[E]very dollar must be supported by record evidence."); *see also United States v. Trujillo*, 502 F.3d 353, 357 (5th Cir. 2007) (The district court may adopt facts in the PSR so long as the facts have an adequate evidentiary basis with sufficient indicia of reliability.); *United States v. Beydoun*, 469 F.3d 102, 107 (5th Cir. 2006) ("The MVRA does not permit restitution awards to exceed a victim's loss.").

The PSR indicates that Parks Food Mart was usually open from 8 a.m. until midnight, a 16-hour period.  The closure was from 6:15 p.m. until midnight.  The peak hours were purported to be from 4 p.m. to 9 p.m.  The closure only partially occurred during the peak hours.  The store was open for 2 hours and 15 minutes of the peak hours, from 4 p.m. to 6:15 p.m.  If we were to evenly prorate the total average sales for an entire Monday, it would

come out to $218.75 per hour for each of the 16 hours, for a total of $1,312.50 for the almost 6-hour closure.  The PSR does not establish the average sales during the peak hours as compared to non-peak hours.  But, even if it did, the store was open for more than 2 hours of peak time, and half of the closure was during non-peak hours, from 9 p.m. to midnight.  Therefore, the record supports restitution for lost sales in the amount of $1,312.50.

For these reasons, I respectfully dissent in part.