# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 25, 2023

Lyle W. Cayce
Clerk

No. 22-30289

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

CHUKWUMA N. OKOYE, JR.,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:21-CR-36-1

Before GRAVES, HO, and DUNCAN, *Circuit Judges*.
PER CURIAM:[*]

Defendant Chukwuma Okoye challenges the amount of restitution ordered by the district court for his participation in a criminal conspiracy, alleging that proceeds of the entire conspiracy were not sufficiently established as foreseeable as required by the statute. Because the record provides sufficient basis for establishing that the amount ordered was foreseeable, we affirm.

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 22-30289

## I.

This case arises out of Defendant's participation—along with two indicted co-defendants who have since fled the country—in a criminal conspiracy that illicitly obtained funds intended for emergency relief during the COVID-19 pandemic. The scheme involved using the stolen personal identifying information from at least 29 different individuals to apply for loans from the Small Business Administration and unemployment insurance from the Washington State Employment Security Department. Those funds were then deposited into PayPal accounts, which were in turn used to load Green Dot debit cards—both of which were also created using stolen personal identifying information. Those cards were then used at online retailers and various physical stores to purchase merchandise and money orders as well as to withdraw cash. The scheme was uncovered after the discovery of these transactions at a Walmart store in Bossier City, Louisiana, with investigators later concluding that $941,244 was laundered through that store alone in just 44 days.

Defendant was indicted and subsequently entered into an agreement with the government by which he pled guilty to conspiracy to use unauthorized access devices. As part of the plea agreement, prosecutors and Defendant jointly "agree[d] and stipulate[d] that the reasonably foreseeable loss amount as to [Defendant's] role in the conspiracy is between $250,000 and $550,000, based on the number of transactions conducted at the Bossier City Walmart by [Defendant] and other conspirators," though they added the caveat that the description "d[id] not represent the totality of the evidence obtained in this case." Subsequently, the presentence report (PSR) detailed that the total amount deposited into the PayPal accounts from the federal and state agencies was $2,379,860 and recommended that Defendant be held responsible for restitution of that amount pursuant to the Mandatory Victim Restitution Act (MVRA), 18 U.S.C. § 3663A.

No. 22-30289

Defendant filed his objections to the restitution amount, citing the stipulated loss range and alleging that he "was a small part of a much larger conspiracy." The probation officer declined to amend the restitution amount, explaining how the evidence indicated that Defendant was responsible for a much larger loss than the amount stipulated. The district court overruled Defendant's objection to the restitution amount, explaining that "[t]he reasons related by the probation officer [made] perfect sense." After adopting the PSR's findings, the court ordered Defendant to pay the full $2,379,860 in restitution and made the restitution joint and several with his co-defendants. Defendant objected to the restitution order and filed a timely notice of appeal.

## II.

The MVRA mandates restitution to victims of offenses committed by fraud or deceit. 18 U.S.C. § 3663A(c)(1)(A)(ii). "To be a victim under the MVRA, a person or organization must suffer a foreseeable loss as a result of the conduct underlying the convicted offense." *United States v. Benns*, 810 F.3d 327, 329 (5th Cir. 2016). The MVRA also requires that the restitution award must reflect "the value of the . . . loss." 18 U.S.C. § 3663A(b)(1)(B)(i)(I).

This court reviews the legality of a restitution order de novo and its amount for abuse of discretion. *United States v. Williams*, 993 F.3d 976, 980 (5th Cir. 2021). A factual finding concerning the amount is reviewed for clear error. *Id.* There is no clear error if a factual finding is plausible in light of the record as a whole. *Id.*

## III.

Defendant's contention, laid out in the two-page argument section of his brief, is that the government failed to establish that any loss above the range stipulated in the plea agreement was foreseeable. He asserts that the

government only established that $2,379,860 was the total amount laundered and did not make sufficient further findings to establish the foreseeability of that total amount.

But as Defendant admits, the district court was not bound by the stipulation. And the record goes far beyond what the stipulation contained. While the stipulated facts focus on Defendant's role in making purchases and withdrawals with the debit cards, the PSR details how Defendant and his co-conspirators were responsible for utilizing stolen personally identifiable information to open the PayPal accounts into which the stolen relief funds were all deposited and for transferring the money to the debit cards. The probation officer's response to Defendant's objections to the PSR also detail their culpability in the purchases and withdrawals far beyond those included in the stipulation, explaining how they visited Walmart stores in 27 cities across Oklahoma, Arkansas, Texas, and Louisiana. This provides a sufficient basis for establishing Defendant's involvement in the entirety of the criminal scheme, rather than merely playing a small role in the purchases and withdrawals at a single Bossier City Walmart store.[1]

The record is open to different plausible interpretations as to whether the responsibility for these actions was Defendant's alone or shared with his

---

[1] Without rebuttal evidence to show that information in the PSR was "materially untrue, inaccurate or unreliable," the district court can adopt the contents of the PSR. *United States v. Taylor*, 277 F.3d 721, 724 (5th Cir. 2001). Here, the defendant's objections to it don't contain any new evidence to demonstrate his allegedly minimal role in the scheme. To be sure, "[t]he PSR . . . cannot just include statements, in the hope of converting such statements into reliable evidence, without providing any information for the basis of the statements." *Id.* But that's just not the case here, with the PSR documenting how information was gathered by Walmart's Global Investigations Team, the Bossier City Police Department, and others. And the PSR makes clear that "[t]he total amount deposited into the 29 PayPal account from the [Small Business Administration] was $2,148,200; and the amount deposited by the [Washington State Employment Security Department] was $231,660, for a total . . . loss amount of $2,379,860."

two co-conspirators. But we need not wade into allocating liability among the three because "a participant in a conspiracy . . . is legally liable for all the actions of [his] co-conspirators in furtherance of this crime" and "[t]he district court was therefore well within its discretion to order restitution for the losses resulting from the entire fraudulent scheme and not merely the losses directly attributable to [Defendant's] actions." *United States v. Ismoila*, 100 F.3d 380, 398–99 (5th Cir. 1996). *See also United States v. Shelton*, 694 F. App'x 220, 222–25 (5th Cir. 2017) (applying this rule in the MVRA context).

\* \* \*

For these reasons, we affirm.

JAMES E. GRAVES, JR., *Circuit Judge*, dissenting:

I disagree with the majority's conclusion that the amount of restitution ordered was foreseeable in light of the stipulation of facts. Because I would vacate and remand for resentencing, I respectfully dissent.

Chukwuma Okoye pleaded guilty pursuant to a plea agreement to conspiracy to use unauthorized devices. The factual basis included a stipulation of facts that was signed and agreed to by both parties. The parties stipulated that "the reasonably foreseeable loss amount as to Okoye's role in the conspiracy" was "*between $250,000 and $550,000*, based on the number of transactions conducted at the Bossier City Walmart by Okoye and other conspirators." (Emphasis added). The factual basis listed only three specific transactions of $1,003.74 involving Okoye at one Walmart in Bossier City. Significantly, the parties also stipulated that the pin number for the card Okoye used was provided to him by a co-conspirator.

The factual basis also recounted the involvement of Patrick Madubuko, Barnabas Akporehe, and others, and the use of Green Dot cards funded by the Small Business Administration (SBA) and the Washington State unemployment insurance via 29 PayPal accounts at one Walmart store in Bossier City. The factual basis made clear that the government knew the extent of the conspiracy at the time it entered into the plea agreement. Importantly, the factual basis also said: "The above-described facts do not represent the totality of the evidence obtained in this case. *However*, the parties signing below agree and stipulate that the preceding paragraphs

No. 22-30289

adequately describe Chukwuma N. Okoye, Jr.'s role in the offense."[1] (Emphasis added).

After Okoye's guilty plea was secured based on a binding agreement that he was responsible for an amount between $250,000 and $550,000 involving transactions in Bossier City, the government then moved the mark by introducing a Presentence Investigative Report (PSR) seeking restitution in the amount of $2,379,860, which the district court granted. The PSR also sought to give Okoye a 16-level enhancement because the loss was more than $1.5 million. The district court correctly sustained Okoye's objection as to that enhancement, instead giving him a 12-level enhancement instead for an intended loss of $550,000.[2] But the district court erroneously overruled Okoye's objection to the restitution amount, saying that "the reasons related by the probation office make perfect sense to me." The district court then adopted the PSR's findings and ordered Okoye to pay restitution of $2,379,860.

The district court ordered the higher amount of restitution despite the government's concessions in its written response to Okoye's objections to the PSR which said that it "agrees that the loss amount reasonably foreseeable to Okoye is between $250,000 and $550,000 as set forth in the factual basis" and "Okoye should be ordered to pay restitution in an amount between $250,000 and $550,000." Notably, the government argues on appeal that the district court did not err.

---

[1] Both the majority and the probation officer disregard the second sentence of this quote. The probation officer repeatedly relied on only the first sentence as meaning he was free to expand the evidence to which the government had already stipulated.

[2] Okoye was sentenced to 46 months, which was at the top of his guidelines range of 37-46 months.

The majority now affirms "[b]ecause the record provides sufficient basis for establishing that the amount ordered was foreseeable." [3] I disagree. The amount that the parties stipulated to was what was foreseeable. Moreover, the amount that went through the Bossier City Walmart and that the Walmart investigator attributed to this group, as discussed above, was less than $1 million. Authorities already seized $719,496. That puts the loss within the $250,000 and $550,000 stipulated amount.

The majority opinion says, "as defendant admits, the district court was not bound by the stipulation. And the record goes far beyond what the stipulation contained." The majority is correct that the sentencing guidelines state that the court is not bound by the stipulation. *See* U.S.S.G. § 6B1.4(d).[4] However, the government *is* bound by the stipulation, as this court has repeatedly concluded.

"Evidentiary stipulations are binding on the parties," *United States v. Banks*, 624 F.3d 261, 264 (5th Cir. 2010) (*citing United States v. Cantu*, 510 F.2d 1003, 1004 (5th Cir. 1975). "A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them. Although a judicial admission is not itself evidence, it has the effect of withdrawing a fact from contention." *Martinez v. Bally's*, 244 F.3d 474, 476 (5th Cir. 2001).

The majority relies on the probation officer's response to Okoye's objections as providing a sufficient basis for Okoye's "involvement in the

---

[3] The "record" the majority references is the PSR and the probation officer's response to Okoye's objections to the PSR, discussed more fully herein.

[4] The district court also cited *United States v. Gremillion*, 418 Fed. App'x 273 (5th Cir. 2011), for this proposition. However, *Gremillion* is both unpublished and distinguishable, as it involved a situation where the defendant did not plead guilty pursuant to a binding plea agreement. *Id.* at 275.

entirety of the criminal scheme, rather than merely playing a small role in the purchases and withdrawals at a single Bossier City Walmart store."[5]  The majority then says, "[t]he record is open to different plausible interpretations as to whether the responsibility for these actions was [Okoye's] alone or shared with his two co-conspirators."

The probation officer's response to Okoye's relevant objection set out a list of Walmart stores in Oklahoma, Arkansas, Texas and Louisiana that the three men allegedly visited and cited the PSR at ¶¶ 21, 23, 29 and 56.[6]  Paragraph 21 of the PSR said, "[t]he [Walmart] investigator *believed* there were more stores that had been used including stores in Arkansas, Louisiana,

---

[5] In footnote 1, the majority says that "[w]ithout rebuttal evidence to show that information in the PSR was 'materially untrue, inaccurate or unreliable,' the district court can adopt the contents of the PSR," citing *United States v. Taylor*, 277 F.3d 721, 724 (5th Cir. 2001).  The majority acknowledges that *Taylor* also says: "The PSR, however, cannot just include statements, in the hope of converting such statements into reliable evidence, without providing any information for the basis of the statements." *Id.* (internal marks and citation omitted).  The majority then says: "But that's just not the case here, with the PSR documenting how information was gathered by Walmart's Global Investigations Team, the Bossier City Police Department, and others."  The majority also quotes a statement in the PSR about money from the SBA and Washington state that was deposited into PayPal accounts.  Significantly, the PSR in no way connects Okoye to Washington state, the PayPal accounts, or those amounts, as discussed herein.  As quoted from *Taylor* above, merely including such statements in no way converts them into reliable evidence.  Moreover, $719,496.42 of the amount referenced by the majority was already seized by authorities.  The majority's claim is unsupported by the PSR.  Nothing in the PSR documents how Okoye was responsible for a foreseeable loss of $2,379,860.  Instead, as discussed more fully herein, the PSR documents that Okoye was responsible for three transactions of $1,003.74 and that the government stipulated the reasonably foreseeable loss attributed to Okoye's role in the conspiracy was between $250,000 and $550,000 to induce a guilty plea before reneging on the stipulation.  The majority now ignores both the record and precedent, thereby nullifying the effect of legal stipulations and condoning the fraudulent inducement of guilty pleas.

[6] The probation officer follows a troubling pattern of citing his original statement of facts without a source as authority for stating them a second time throughout his responses.  However, this circular logic does not establish an indicia of reliability.

Texas, and Oklahoma.  An aggregate amount of $960,324 was the amount the Walmart investigator calculated this particular group amassed from unloaded gift cards."  (Emphasis added).

Paragraphs 23 and 29 referenced the response from Green Dot, clusters of addresses in Texas, and various transactions.  However, paragraph 23 did not mention Okoye, and paragraph 29 only possibly mentioned him to the extent that it said transactions at the 8 oz. Burger Bar in Bossier City matched a participating Walmart employee's statement of eating there with "the suspects."  Paragraph 29 also said that the "total amount of money that was transferred from PayPal to Green Dot cards was $1,339,600."[7]

Paragraph 56 essentially blamed Okoye for the entire conspiracy and said:

> The investigative material indicates the defendant defrauded the Cares Act and/or the Washington State Unemployment Insurance in that he, using the identity of at least 29 people, applied for and received loans and unemployment benefits. The defendant then laundered the money by opening PayPal accounts in the names of the victims and transferred the money to Green Dot debit cards. To obtain the laundered money from the Green Dot cards, the defendant traveled in rented cars (from Dallas, Texas) to areas (mostly) in Arkansas, Oklahoma, and Louisiana . . . .

Other than the broad statement that, "[t]he investigative material indicates," this paragraph offered no source for any of the alleged facts. However, as discussed above, paragraph 21 said that the source for part of it is an investigator from Walmart, and the facts were what he "believed."  The

---

[7] The PSR does not address what happened to the remainder of the $2,379,860.

PSR also reflected that Green Dot and PayPal allegedly replied to requests and provided partial information but neither identified Okoye as having any involvement. The PSR discussed the statements of the three Walmart employees who were involved in the conspiracy, but the reference is repeatedly to "the suspects" without identifying Okoye. One Walmart employee specifically referenced someone named "Steve." The PSR also said that one of the participants, Willie Townsel, provided an interview and said that he got the cards and pin numbers from Madubuko and Akporehe.

The PSR specifically referenced Okoye in other paragraphs though. For example, in paragraph 30 the PSR stated that a comparison of records from the Horseshoe Casino and Green Dot transactions revealed that Madubuko was a guest at the hotel on specific days the Walmart employees alleged. It then says, "The following suspects were also developed: Patrick Madubuko, Barnabas Akporehe, Willie Townsel, and Okoye. These names also matched information from the Margaritaville Casino/Hotel." The PSR does not explain what exactly that is supposed to mean. In paragraph 31, the PSR said that the Walmart employees were able to identify Okoye and others in a photo lineup. However, there is no explanation as to what that means beyond the fact that Walmart employees recognized photos of the guys they had been helping and socializing with at the casino hotel. There is also no indication that any of the Walmart employees ever said that Okoye set up any of the PayPal accounts or Green Dot cards or that he had more than the role stipulated to by the government.

This court has previously concluded that a probation officer's conclusions lack an indicia of reliability when there is nothing else in the record to support them and they do not provide the source. *See United States v. Shacklett*, 921 F.2d 580, 584 (5th Cir. 1991). Such is the case here. Additionally, Okoye's indictment did not mention any transactions in

Arkansas or Oklahoma; it only mentioned the three transactions in Bossier City.

There is no evidence that Okoye even had the pin number for the Green Dot card(s) he used. Instead, the government stipulated that Okoye obtained the pin number from a co-conspirator. That is an indication that Okoye was not involved in setting up the PayPal accounts or Green Dot cards. Also, the PSR recites nothing that directly connects Okoye to Washington state, the SBA or the PayPal accounts.

This court has previously said that the PSR cannot merely include a recitation of conclusions "in the hope of converting such statements into reliable evidence, without providing any information for the basis of the statements." *United States v. Taylor*, 277 F.3d 721, 724 (5th Cir. 2001). Further, "[b]ald, conclusionary statements do not acquire the patina of reliability by mere inclusion in the PSR." *United States v. Elwood*, 999 F.2d 814, 817-18 (5th Cir. 1993). The PSR is rife with bald, conclusory statements that have now been accepted as fact.[8]

Here, there was a stipulation of facts. Because they were stipulated to, both Okoye's role in the conspiracy and the amount of foreseeable loss were withdrawn from contention. *See Martinez*, 244 F.3d at 476. Also, the

---

[8] The government asserts that Okoye "did not rebut the evidence in the presentence report." The government does not explain how Okoye would have rebutted evidence that did not exist. Again, nothing in the PSR directly tied Okoye to the SBA, Washington state, or setting up either the PayPal accounts or Green Dot cards. The government also asserts that Okoye is liable in restitution for the reasonably foreseeable losses caused by their co-conspirators. But nothing in the PSR directly tied Madubuko or Akporehe to the SBA, Washington state or setting up the PayPal accounts. There is arguably evidence indicating that Madubuko and/or Akporehe were involved in setting up the Green Dot cards, as Townsel said they provided the pin numbers. But there is not substantial evidence that Okoye played a much larger role than what was in the stipulation.

stipulated facts are just as binding on the government as they are on Okoye. *See Banks*, 624 F.3d at 264.

This court has said that a "trial court may disregard stipulations between parties only if accepting them would be manifestly unjust or if the evidence contrary to the stipulation was substantial." *United States v. Ret. Serv. Group*, 302 F.3d 425, 430 (5th Cir. 2002) (quoting *Hymel v. Comm'r*, 794 F.2d 939, 940 (5th Cir. 1986). Here, accepting the stipulation between Okoye and the government would not be manifestly unjust, and there is not substantial evidence contrary to the stipulation. The district court did not address either finding before disregarding the stipulation and overruling Okoye's objection.

The district court had no basis for even considering a much higher amount for restitution until the government reneged on the stipulation and used the PSR to seek more time and more restitution after Madubuko and Akporehe fled the country. The district court clearly erred in finding that the amount of loss was $2,379,860 rather than within the stipulated range. The majority now fails to provide any authority to support a conclusion that the government is not bound by a binding agreement regarding Okoye's role and the amount of reasonably foreseeable loss attributable to him. Because I would vacate and remand for resentencing, I respectfully dissent.